FILED
United States Court of Appeals
Tenth Circuit

November 8, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ENTEK GRB, LLC,

      Plaintiff - Appellee,

v.

STULL RANCHES, LLC,

      Defendant - Appellant.

No. 15-1267

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:11-CV-01557-PAB-KLM)**

---

Dudley W. Von Holt (Bruce D. Ryder and James M. Cox with him on the briefs), of Thompson Coburn LLP, St. Louis, Missouri, for Defendant-Appellant.

Jonathan S. Franklin of Norton Rose Fulbright, US LLP, Washington, D.C. (Robert D. Comer of Norton Rose Fulbright, US LLP, Denver, Colorado, with him on the brief) for Plaintiff-Appellee.

---

Before **KELLY**, **BRISCOE**, and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

    Law of the case doctrine permits a court to decline the invitation to

reconsider issues already resolved earlier in the life of a litigation. It's a pretty

important thing too.  Without something like it, an adverse judicial decision would become little more than an invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if at first you don't succeed, just try again.  A system like that would reduce the incentive for parties to put their best effort into their initial submissions on an issue, waste judicial resources, and introduce even more delay into the resolution of lawsuits that today often already take long enough to resolve.  All of which would "gradual[ly] undermin[e] . . . public confidence in the judiciary."  *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000); Charles Alan Wright et al., 18B Fed. Prac. & Proc. Civ. § 4478 (2d ed. 2002) (the doctrine embodies "[t]he basically simple principle of disciplined self-consistency").

To us this appeal appears a textbook case for the doctrine's application. Two years ago, Entek appealed a district court decision holding that it could not cross Stull's surface estate to access minerals lying under other estates in the same unitized area.  Stull defended the district court's decision on two grounds. First, it said the doctrine of issue preclusion mandated the result.  Second and besides, it said the district court's judgment was right on the merits because nothing in the Mineral Leasing Act (MLA) permitted Entek the access it sought. This court rejected both arguments for affirmance and returned the matter to the district court.  *See Entek GRB, LLC v. Stull Ranches, LLC*, 763 F.3d 1252 (10th Cir. 2014) ("*Entek I*").  Eventually and following this court's guidance, the

district court entered judgment for Entek.  All the same, in this second appeal Stull invites us to reconsider many of the same issues we considered and resolved in the first appeal.  Law of the case doctrine rightly bars the way, precluding the relitigation of issues either expressly or implicitly resolved in prior proceedings in the same court.  *See Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1280 (10th Cir. 2010) ("[T]he law of the case doctrine applies to issues previously decided, either explicitly or by necessary implication." (internal quotation marks omitted)); Wright et al., *supra*, § 4478 ("The decision of an issue need not be express to establish the law of the case.  Implicit decision suffices.").

To be sure, Stull seeks to persuade us that the issues it wishes to pursue are really new ones, matters neither explicitly nor implicitly passed on in the first appeal.  But with one possible exception we will come to in a moment, we don't see it.

Consider Stull's first and primary argument.  Stull says that a "savings clause" adopted as part of the MLA in 1946 guaranteed that its surface rights would never be invaded.  But the statutory language Stull points to says simply that the MLA doesn't "affect any right acquired under the law as it existed" and that any such right "shall be governed by the law in effect at the time of its acquisition."  An Act to Amend the Mineral Leasing Act of Feb. 25, 1920, Pub. L. No. 79-696, § 15, 60 Stat. 950, 958 (1946).  That, of course, invites the question: what rights did Stull have at the time of the MLA's amendment in 1946?  The

-3-

parties do not dispute that Stull's pre-1946 surface patents came subject to an express reservation allowing the government to "prospect for, mine, and remove" subsurface minerals pursuant to the Stock-Raising Homestead Act of 1916. And the last time this case was before this court we expressly held that the 1916 Act reserved to the government the right to enter and use "so much of the surface" as might be "reasonably incident" to mine and remove minerals — and to enact future laws regarding the disposition of the mineral estate, including laws permitting Entek to traverse Stull's surface estate. *Entek I*, 763 F.3d at 1254 (quoting 43 U.S.C. § 299(a)). So it is that, in the end, we could not rule for Stull in this appeal without revisiting and revising our judgment in the last appeal concerning the effect of the 1916 Act and later laws passed under its terms.

Much the same story repeats itself when we approach three of Stull's other arguments. First, Stull suggests that the Secretary of the Interior lacks statutory authority under 30 U.S.C. § 226(m) to alter surface access rights in unitized areas for purposes of mineral exploration. But the last time the case was here we expressly held that the statute affords the Secretary just this authority. *Entek I*, 763 F.3d at 1255-56. Second, Stull contends that we should afford *Chevron* deference to an administrative interpretation of the relevant statutory law: *Int'l Petroleum & Expl. Operating Corp.*, 178 I.B.L.A. 1 (2009). But we couldn't do that much without abrogating our ruling last time around that this administrative case fails to speak at all to § 226(m) or the specific unitization agreement at issue

here.  *Entek I*, 763 F.3d at 1257 n.3.  Third, Stull contends that the district court erred in failing to hold the United States an indispensable party.  But the district court issued its ruling on that question before the first appeal, Stull initiated a cross-appeal on the issue as part of the first appeal, and it then later chose to withdraw its cross-appeal.  And under this circuit's law of the case doctrine, "[a] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, [generally] becomes the law of the case."  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 321 F.3d 950, 992 (10th Cir. 2003).

Of course, the decision whether to apply law of the case doctrine remains a matter of judicial discretion.  *See Messinger v. Anderson*, 225 U.S. 436, 444 (1912).  As Judge Phillips once explained (if while sitting outside the circuit), we may exercise the discretion to entertain relitigation of settled issues when the failure to do so would work "a manifest injustice."  *White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967); *see also Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1133 (10th Cir. 2001); Wright et al., *supra*, § 4478.

Stull has not convinced us anything like that exists here.  Stull suggests it was surprised the court addressed the merits issues it presented in the first appeal.  But we don't see how any litigant might persuasively profess surprise that a court would address the issues it presents for decision — or would later decline to consider additional supplemental arguments on those same issues that the litigant

could have but failed to present the first time around (or in one instance did present but chose to withdraw). Neither, for that matter, do Stull's arguments give us reason to think that allowing our earlier panel opinion and district court judgment to stand would work a manifest injustice or even ensconce error, for we remain persuaded that the earlier panel correctly interpreted the 1916 Act and the Secretary's authority under § 226(m). And while Stull suggests we may review the indispensable party question at any time, were we to do so here we'd only wind up repeating the district court's able and ample discussion of the issue.

So it is we will not tangle any more with these arguments. Stull had the chance and incentive to present them all at earlier stages in the proceedings; it has enjoyed vigorous representation by counsel throughout several years of proceedings; no one cites any new legal or factual developments that have intervened since the time of our last decision; and it would be unfair to Entek and a waste of judicial resources for this court to entertain any further new arguments on old issues, like some sort of extended game of litigation whack-a-mole. "The law of the case doctrine is intended to prevent continued re-argument . . . to avoid in short, Dickens's Jarndyce v. Jarndyce syndrome," a syndrome that we would only risk feeding by proceeding further. *Huffman*, 262 F.3d at 1132 (internal quotation marks omitted); *see also McIlravy*, 204 F.3d at 1035 ("The promotion of judicial economy — a primary concern underlying the law of the case doctrine

-6-

— requires that litigants be encouraged to present all available claims and defenses at the earliest opportunity.").

As we alluded to earlier, though, one issue remains that someone could at least possibly suggest wasn't addressed, explicitly or implicitly, in earlier proceedings. It concerns the question whether the statutory structure as applied here violates constitutional due process and equal protection guarantees. But even if law of the case doesn't bar Stull's way in this particular instance, forfeiture and waiver doctrine do. Although Stull cited due process when it argued before the district court that any invasion of its surface would constitute a taking in violation of the Fifth Amendment, Aplt. App. vol. XXXVI at 1973-74, it never presented to the district court the argument it presses here — that it didn't receive fair notice of changes to its surface rights in violation of due process. This court will normally treat as forfeited or waived issues that a litigant fails to preserve and present in the district court. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011). The reasons for this general rule find illustration in our case too, for Stull asks us to take on the question whether a congressional statute violates the Constitution without the benefit of the district court's judgment and with only a modest engagement between the parties on the question in this (second) appeal. Weighing in on such a weighty issue with so little help strikes us as a less than wise course. Perhaps other litigants in other cases can

and will press arguments along these lines.  But prudence suggests that discretion today remains, as it so often does, the better part of valor.

Stull replies that an out-of-circuit decision, *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995), either commands or at least encourages us to take up its constitutional challenge.  In fact, though, the court in *Crocker* merely held that as a matter of discretion it would entertain an argument in a second appeal that the party, as appellee, failed to present in the first appeal.  *Id.* at 741.  It did not suggest that the party was free to raise an issue for the first time on appeal without any presentation in the district court, let alone that the party should be absolved from this traditional adversarial obligation when it comes to a claim as consequential and complex as the one now laid before us.  Neither, for that matter, does Stull give us any reason to think any error here would meet the plain error standard or even make the attempt to show it might.  *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010).

Affirmed.

No. 15-1267, Entek GRB, LLC v. Stull Ranches, LLC

**BRISCOE**, Circuit Judge, concurring.

Stull raises five separate issues. First, that our decision in Entek I conflicted with the MLA. Second, that the Secretary of the Interior may not alter surface use rights in mineral leases. Third, that we should apply Chevron deference to a BLM adjudicatory decision. Fourth, that Stull's constitutional rights to due process and equal protection will be violated if we do not reverse. And fifth, that the district court should have dismissed the case under Rule 19.

I agree that law of the case controls here to resolve most of the issues raised. Matters actually decided explicitly or implicitly become law of the case. Wilmer v. Bd. of Cty. Comm'rs, 69 F.3d 406, 409 (10th Cir. 1995) (citing Guidry v. Sheet Metal Workers Int'l Ass'n Local 9, 10 F.3d 700, 705 (10th Cir. 1993)). The balance of Stull's issues fail because they have been waived or forfeited. I agree with the majority's treatment of four of the five issues, and write only to more fully address Stull's constitutional claims.

Stull argues violations of its constitutional rights to due process, Aplt. Br. at 30–35, and equal protection, id. at 35–37. As regards due process, Stull argues that it was entitled to notice of its rights and that "[a]ny re-interpretation of existing regulations and laws to take property rights" would violate due process. Id. at 30–31. Specifically, Stull argues that "[t]he SRHA did not provide notice that the government was reserving the right to cross the surface to access . . . other property" and that the second reserved right "concern[ed] those reserved

minerals" under the patented land, not other land.  Id. at 31.  Stull next says that the patent and the MLA did not give notice either.  Id.  Then Stull argues that the BLM gave no notice when it approved or altered the FRU Agreement or the regulations prescribing the standard unit agreement.  Id. at 32–34.  Lastly, Stull says "the failure to provide notice and an opportunity to be heard on the events concerning the FRU cannot be undone retroactively to justify a change in surface rights."  Id. at 35.

Stull then states that the Fifth Amendment guarantees equal protection – according to Stull, this means that the federal government may not "apply[] different standards to similarly situated individuals."  Id.  It argues that this guarantee has been violated by our decision in Entek I because it "creates a conflict between the application of SRHA and MLA rights between the courts in the Tenth Circuit and the Department of the Interior."  Id. at 36.  It argues that "[s]uch differing standards applied to similarly situated parties violates equal protection."  Id. at 37.

Stull made a due process argument in its brief opposing summary judgment for Entek: "Even if the United States had passed a law or regulation allowing a lessee of mineral rights to cross any surface within the FRU to reach a well on any other surface within the FRU (which it has not), such a law or regulation would violate Stull's due process rights . . . ."  Aplt. App. Vol. 36 at 1973. There, Stull argued that it "ha[d] a valuable surface access property right that it

2

can sell to oil companies" and that "[t]o deprive Stull of that property right would violate . . . due process . . . ." Id. at 1974. Stull also briefly alluded to its due process rights in its response brief in Entek I. Entek I Aple. Br. at 20 ("Stull Ranches has not sold or otherwise conveyed crossing rights to Entek and there is no basis for judicially taking those rights."). At face value, therefore, Stull made a due process argument to the district court. However, Stull's arguments were conclusory and made no mention of how its due process rights were deprived. On appeal, Stull says it received no notice of its "change" in surface rights. Aplt. Br. at 35. But Stull did not mention a lack of notice as grounds for a due process challenge until its brief in this appeal. Thus, this argument is forfeited.

Stull has certainly forfeited the equal protection argument by failing to present the argument to the district court. Perhaps Stull could not have made the argument before our decision in Entek I because that decision had not yet issued. However, Stull could plainly have foreseen the possibility that we would reverse in Entek I and could have brought the argument to our attention. Importantly, Stull did not make the argument in its petitions for rehearing or certiorari. Perhaps if Stull had made the argument at that point, we or the Supreme Court could have addressed the issue. But at this point it is barred.[1]

_____

[1] We did not explicitly or implicitly decide either constitutional issue in Entek I. Therefore the law of the case is inapplicable to both arguments (and Entek does not argue otherwise).

3