GRAY, Justice.
[¶1] This dispute, over priority of rights between mineral developers in Wyoming's Powder River Basin, is before the Court a second time. Berenergy owns rights to both federal and private oil and gas. Peabody holds federal coal leases, and these minerals overlap. Berenergy Corp. v. BTU Western Resources, Inc. , 2018 WY 2, ¶¶ 38-42, 408 P.3d 396, 404 (Wyo. 2018) ( Berenergy I ). In Berenergy I , we determined the United States Department of Interior, Bureau of Land Management (BLM) was a necessary party to the proceedings dealing with competing federal leases. We remanded Berenergy I to the district court to determine whether the BLM could be joined as a party and, if it could not, instructed the case be dismissed. Id. ¶ 43, 408 P.3d at 405.
[¶2] A petition for rehearing was filed alleging the private oil and gas lease (Thornburg lease) was not appealed or decided in Berenergy I . The Thornburg lease-like Berenergy's federal oil and gas leases-overlaps Peabody's federal coal lease. We declined to amend our opinion, finding that issues related to the Thornburg lease were not appealed. In doing so, we did not limit the district court's authority to consider the Thornburg lease issues on remand if it found it appropriate to do so.
[¶3] On remand, the district court held that it did not have subject matter jurisdiction "as to the lands underlying the Thornburg lease absent the presence of the BLM ... [and was] limited to construing the leases affecting the lands underlying the Thornburg lease." The district court applied the "law of the case" in deciding that a form of the accommodation doctrine governs to resolve the parties' dispute on the overlapping minerals. It declined to rule on what accommodation would be required because of its finding on jurisdiction. Both parties appeal. We reverse, in part, and affirm, in part.
ISSUES
[¶4] We address the following issues:
I. Is the BLM's participation necessary to resolve the Thornburg lease dispute?
II. Does law of the case doctrine require the district court to apply its original judgment of accommodation?
FACTS
[¶5] Most of the facts underlying this case are set forth in Berenergy I , ¶¶ 5-12, 408 P.3d at 397-99 and, except for those pertinent to this appeal, are not reiterated here.
*53 [¶6] Berenergy and Peabody develop minerals in Wyoming's Powder River Basin. Berenergy produces oil from both federal and private oil and gas leases. The private lease known as the Thornburg lease is the subject of this appeal. Peabody mines coal pursuant to its separate federal leases. It plans to extract coal by strip mining areas subject to Berenergy's oil and gas leases, including the Thornburg lease. Peabody's process requires removing top soil, blasting, and excavating the subsurface. Peabody cannot blast within 500 feet of an engineered structure, including an oil well. The parties cannot simultaneously conduct their operations. See Berenergy I , ¶ 12, 408 P.3d at 398.
Original Proceedings in District Court
[¶7] Berenergy filed its lawsuit seeking a declaration of the parties' relative rights to develop the minerals subject to their leases. The district court granted in part and denied in part the parties' cross-motions for summary judgment concerning questions of which legal principles should govern their conflict. The district court held the dispute would be resolved under the accommodation doctrine and that its ruling on the relative rights of the parties under their conflicting federal mineral leases would apply equally to the Thornburg lease. A bench trial followed. After trial, the district court ruled on a number of issues. Those decisions relevant to this appeal are: (1) Berenergy must, at appropriate times, cease production and cap its wells below the projected coal seam allowing Peabody to mine through these areas; (2) Peabody must compensate Berenergy for losses in production on a per well basis; and (3) Peabody must escrow monies to cover Berenergy's costs for waterflood production of its oil leases using an off-site well.[1]
Berenergy I
[¶8] In Berenergy I , we considered cross-appeals of the district court's ruling regarding the federal leases. Berenergy I , ¶ 14, 408 P.3d at 399. We concluded that we could not reach the substance of those appeals because the BLM was a necessary party to be joined under Rule 19 of the Wyoming Rules of Civil Procedure. Id. ¶¶ 37-43, 408 P.3d at 403-05. We remanded the case "for an evaluation of whether a federal agency may participate in this suit" and directed the district court to dismiss the case if the BLM could not be joined. Id. ¶ 43, 408 P.3d at 405.
Petition for Rehearing Berenergy I
[¶9] Peabody petitioned for rehearing of Berenergy I arguing that Berenergy had not appealed the district court's decision regarding the private Thornburg lease and, as a result, that portion of the case should not be subject to the dismissal requirements of Berenergy I . In response, Berenergy asserted that the Thornburg lease was appealed and the entire case-including the Thornburg issue-should be dismissed. In our order on rehearing, we held that "the issues related to the Thornburg lease were not presented to the Court" on appeal and said: "Given the circumstances, this Court finds it inappropriate to amend [ Berenergy I ] to address issues related to the Thornburg lease. In so ruling, this Court does not limit the district court's authority to consider the Thornburg lease issues, if the district court finds such consideration appropriate."
District Court's Decision on Remand
[¶10] On remand, the district court held, "This Court further concludes that it lacks subject matter jurisdiction to grant the relief previously granted to Peabody as to the lands underlying the Thornburg lease absent the presence of the BLM. Instead, the Court is limited to construing the leases...." The district court then found that the law of the case applied, meaning its earlier decision *54 (that the accommodation doctrine controlled the order and operation of development with respect to the Thornburg lease) had not been appealed and the decision remained in effect. The district court did not decide what a suitable accommodation would be, concluding instead that the decision on what constitutes a suitable accommodation rested with the BLM.
Current Appeal
[¶11] Peabody contends that the district court: (1) can fully resolve the Thornburg lease dispute without the BLM's participation; and (2) the district court should not have reopened the final judgment on the Thornburg lease dispute. In the alternative, Peabody contends, if the Thornburg lease dispute is reopened, the district court should enforce Peabody's right to mine through the Thornburg lease pursuant to the Coal Lands Act, 30 U.S.C. §§ 83 - 85, as opposed to the accommodation doctrine. Berenergy argues that the district court correctly held: (1) that our decision in Berenergy I deprived it of subject matter jurisdiction to determine suitable accommodation between Peabody and Berenergy; and (2) Peabody waived any right to rely on the Coal Lands Act when it failed to appeal this issue in Berenergy I .
DISCUSSION
I. Is the BLM's participation necessary to resolve the Thornburg lease dispute?
[¶12] On appeal, Peabody contends that the district court incorrectly concluded that it could not fully resolve the Thornburg lease dispute without the BLM. Berenergy concedes that its original position was that the district court had jurisdiction over its claims for declaratory judgment but now argues that our decision in Berenergy I mandates the conclusion that the district court lacks jurisdiction over the Thornburg lease dispute, despite its belief "that the jurisdictional ruling in Berenergy I is inconsistent with prior decisions on that issue."
[¶13] The district court conflated subject matter jurisdiction with W.R.C.P. Rule 19, reading our direction in Berenergy I to dismiss the case if the BLM could not be joined as a jurisdictional mandate. To the contrary, Berenergy I did not question the existence of subject matter jurisdiction. Our decision in Berenergy I concerned joinder of an indispensable party, a non-jurisdictional question. It held that there was no decision this Court could make on the issues appealed that would have binding effect without the BLM's participation. Berenergy I , ¶¶ 38-41, 408 P.3d at 403-04. Our precedent makes clear that Wyoming courts have jurisdiction over mineral disputes between private parties, even where federal leases may be concerned, and the parties offer no authority to the contrary. Belle Fourche Pipeline Co. v. State , 766 P.2d 537 (Wyo. 1988) ; Reno Livestock Corp. v. Sun Oil Co. , 638 P.2d 147 (Wyo. 1981) ; Ready v. Texaco, Inc. , 410 P.2d 983 (Wyo. 1966) ; Holbrook v. Continental Oil Co. , 73 Wyo. 321, 278 P.2d 798 (1955) ; Richardson v. Midwest Refining Co. , 39 Wyo. 58, 270 P. 154 (1928). The question in this case is not whether the district court had subject matter jurisdiction over the Thornburg lease dispute, rather it is whether the court could fully resolve that dispute without the BLM's participation.
STANDARD OF REVIEW
[¶14] In Grove v. Pfister , we said:
District court rulings on joinder are reviewed for an abuse of discretion. Rivermeadows, Inc. v. Zwaanshoek Holding and Financiering, B.V. , 761 P.2d 662, 668-70 (Wyo. 1988) ; England v. Simmons , 728 P.2d 1137, 1139-40 (Wyo. 1986).
[T]he core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." Vaughn v. State , 962 P.2d 149, 151 (Wyo. 1998). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." Id. (quoting Byerly v. Madsen , 41 Wash. App. 495, 704 P.2d 1236, 1238 (Wash. App. 1985) ); Basolo v. Basolo , 907 P.2d 348, 353 (Wyo. 1995).
*55 Grove v. Pfister , 2005 WY 51, ¶ 4, 110 P.3d 275, 277 (Wyo. 2005). To the extent the district court's decision was based on a legal conclusion, we review that portion of the issue de novo. See Jensen v. Milatzo-Jensen , 2013 WY 27, ¶ 18, 297 P.3d 768, 774 (Wyo. 2013) (the application of a statute is a question of law reviewed de novo); Weinstein v. Beach , 2014 WY 167, ¶ 9, 340 P.3d 1013, 1016 (Wyo. 2014) (while award of costs is reviewed for abuse of discretion, the legal question of whether cost provisions apply is reviewed de novo). We review the district court's Rule 19 findings for an abuse of discretion, and we review conclusions of law underlying those findings de novo.
ANALYSIS
[¶15] Rule 19 of the Wyoming Rules of Civil Procedure provides:
(a) Persons to be joined if feasible.- A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties; or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party....
(b) Determination by court whenever joinder not feasible. -If a person as described in subdivisions (a)(1) and (a)(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:
(1) To what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;
(2) The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;
(3) Whether a judgment rendered in the person's absence will be adequate;
(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
W.R.C.P. Rule 19 (2014).[2]
[¶16] The district court concluded that it could not fully resolve the Thornburg lease dispute without the BLM; however, the private Thornburg lease presents a different inquiry than the examination of the parties' positions vis-à-vis the federal leases. In Berenergy I , we analyzed leases where there were no independent private rights. All leases were with the BLM. Our analysis included the Mineral Leasing Act and pertinent federal regulations as they related to competing federal leases. Berenergy's federal leases gave the BLM the "discretion, in service of the public interest, to control the quarterly rate of production" and "grant[ed the] authority to manage federal minerals to [the BLM]." Berenergy I , ¶¶ 29-30, 408 P.3d at 402. Peabody's leases provided that "BLM retains the authority to alter and/or modify the resource recovery and protection plans for coal operations and/or oil and gas operations on those lands covered by Federal mineral leases so as to obtain maximum resource recovery." Id. ¶ 33, 408 P.3d at 402-03. Our examination led to our conclusion that the "[b]alancing of competing rights to mineral production in the public's interest is in part *56 an intensely policy-driven matter committed to the [BLM]." Any decision we rendered would have been merely advisory in light of the BLM's authority to disregard it where the BLM was not a party. As such, the BLM was a party that should have been joined. Id. ¶¶ 35, 37-39, 408 P.3d at 403-04. Berenergy I is limited to the question of competing federal leases that place decision-making authority over the operational rights conveyed "squarely and solely in the hands of the Secretary of the Interior and his designees." Id. ¶ 34, 408 P.3d at 403.
[¶17] The Thornburg lease is private, and it contains no language vesting the BLM with discretion over its operational rights vis-à-vis competing federal leases. The analysis in Berenergy I does not apply to this private/federal lease question. The BLM's participation in the Thornburg lease dispute is not required, and a binding decision can be made in its absence. The BLM is not a necessary party under Rule 19 or pursuant to our analysis in Berenergy I .
[¶18] The court in Entek GRB, LLC v. Stull Ranches, LLC , 113 F. Supp. 3d 1113 (D. Colo. 2015), reached a similar conclusion under analogous facts. There, Entek GRB, LLC (Entek), a federal mineral lessee, sued the surface owner, Stull Ranches, LLC (Stull) seeking a declaration that it had the right to use Stull's property to access a well located on the surface of an estate owned by a third party. Id. at 1113, 1115. Stull argued that the BLM was an indispensable party under Rule 19 of the Federal Rules of Civil Procedure to the lawsuit because a decision would "directly affect the scope of the property rights owned by the BLM." Id. at 1119. The court recognized that, while an examination of federal mining statutes was required to determine the scope of Entek's rights, it "does not alter the fact that the relief sought ... directly concerns Entek's rights with respect to [the lease]." Id. The court explained that "[w]ith respect to whether complete relief can be awarded between Entek and Stull, the fact remains that neither party sought relief against the BLM." Id. at 1120. Stull argued that the BLM had an interest in the matter because it "may not agree" with the outcome "which could lead to 'unanticipated consequences' ... or [could] cause the BLM to 'reevaluate the unitization program.' " Id. at 1120-21. The court concluded that Stull's "arguments as to this consideration are unsupported" and recognized that courts have been determining relative rights of federal mineral lessees to other owners or users without the United States as a party since 1928 in Kinney-Coastal Oil Co. v. Kieffer , 277 U.S. 488, 48 S. Ct. 580, 72 L. Ed. 961 (1928). Entek , 113 F. Supp. 3d at 1121 (citing BTU W. Res., Inc. v. Berenergy Corp. , 300 F.R.D. 572, 574 (D. Wyo. 2014) ). Finally, the court found that neither Stull nor Entek would be subjected to a substantial risk of inconsistent obligations because of the relief granted in that case. Entek , 113 F. Supp. 3d at 1121. See also Amerada Petroleum Corp. v. Rio Oil Co. , 225 F. Supp. 907, 910-11 (D. Wyo. 1964) (holding that mineral lessor was not indispensable party to dispute between mineral lessee and other parties claiming title to the minerals); Texas Co. v. Wall , 107 F.2d 45, 50 (7th Cir. 1939) (holding that "when a plaintiff-lessee is seeking merely to enjoin a defendant-lessee from interfering with the plaintiff's leasehold interest, and no relief is sought either for or against the plaintiff's lessor, the decree of the trial court ordinarily can be so framed as not to affect the rights of the plaintiff's lessor").
[¶19] The situation here is similar to the preceding cases. First, the accommodation contemplated by the district court (requiring reimbursement for lost production and the escrow of money to reimburse Berenergy any actual incurred costs under a potential waterflood plan) does not impact the BLM's rights. Second, neither party sought relief against the BLM. Third, the BLM's interest in the outcome of the Thornburg lease dispute is not distinguishable from its interest in the outcome of any other dispute concerning rights of federal mineral lessees and private estate owners. Wyoming courts have a long history of considering these cases in the absence of the BLM. See supra ¶ 13. Finally, like the court in Entek , we see no likelihood that either Berenergy or Peabody would be at risk of inconsistent obligations due to the *57 relief granted by the district court.[3] The BLM is not a person to be joined, if feasible, under Rule 19(a).
[¶20] Even if we assume that the BLM was a person to be joined if feasible, a Rule 19(b) analysis shows the Thornburg lease dispute can be resolved absent BLM's participation. Rule 19(b) instructs the Court to consider four factors in determining whether an action should proceed where a party who is required to be joined, if feasible, cannot be joined:
(1) To what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;
(2) The extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;
(3) Whether a judgment rendered in the person's absence will be adequate;
(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
W.R.C.P. Rule 19(b) (2014); See, e.g. , Miller v. Bradley , 4 P.3d 882, 887-88 (Wyo. 2000), abrogated on other grounds by In re Crago , 2007 WY 158, 168 P.3d 845 (Wyo. 2007) ; L.U. Sheep Co. v. Board of County Comm'rs of Hot Springs , 790 P.2d 663, 666-67 (Wyo. 1990).
[¶21] A review of these factors also leads to the conclusion that this case should proceed in the BLM's absence. A judgment rendered in the BLM's absence would not be prejudicial to the existing parties. This conclusion makes the second factor irrelevant. Third, a judgment rendered in the BLM's absence as to the Thornburg lease dispute would be adequate. Fourth, and perhaps most significantly, if the action is dismissed for nonjoinder, no adequate remedy or forum exists to address the Thornburg lease dispute or others like it.[4]
[¶22] The BLM is not a person to be joined if feasible under Rule 19(a). Even if we assume it is a person to be joined if feasible, the BLM is not indispensable under Rule 19(b). W.R.C.P. Rule 19. The district court abused its discretion when it held otherwise. It could properly resolve the parties' dispute regarding the Thornburg lease absent the BLM.
II. Does law of the case doctrine require the district court to apply its original judgment of accommodation?
[¶23] In its cross-appeal, Berenergy argues that the district court erred when it applied the law of the case doctrine to reach its conclusion that the accommodation doctrine controlled the Thornburg lease.[5] Peabody takes the position the Court's decision was correct on the accommodation doctrine, but the Court should have enforced the complete order including the substantive provisions that comprise the accommodation.[6]
STANDARD OF REVIEW
[¶24] The decision whether to apply the law of the case doctrine is discretionary, but once a court applies the doctrine, the actual application is reviewed as a matter of law. Thus, our review requires a two-part analysis. First, we review the decision to apply the doctrine for abuse of discretion. See *58 Lieberman v. Mossbrook , 2009 WY 65, ¶ 28, 208 P.3d 1296, 1305 (Wyo. 2009). Courts may exercise discretion to "entertain relitigation of settled issues when the failure to do so would work 'a manifest injustice.' " Entek GRB, LLC v. Stull Ranches, LLC , 840 F.3d 1239, 1242 (10th Cir. 2016) ; see also 18B Charles A. Wright et al., Federal Practice and Procedure § 4478 (2d ed. 2002). Second, we review de novo whether the prior decision controls the issue raised in the subsequent proceeding. Ultra Resources, Inc. v. Hartman , 2015 WY 40, ¶ 58, 346 P.3d 880, 900 (Wyo. 2015).
ANALYSIS
[¶25] Relitigation of the Thornburg lease dispute is not necessary to avoid a "manifest injustice." See Entek , 840 F.3d at 1242. Both parties have had ample opportunity to set forth their positions throughout extensive litigation and have adequately done so. Accordingly, we find that the district court did not abuse its discretion when it applied the law of the case doctrine.
[¶26] Now, we turn to our de novo review of whether the law of the case doctrine bars further consideration of the decision that the accommodation doctrine applies to the Thornburg lease. "Under the 'law of the case' doctrine, a court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." Triton Coal Co. v. Husman, Inc. , 846 P.2d 664, 667 (Wyo. 1993) (citing 1B James W. Moore et al., Moore's Federal Practice ¶ 0.404[1] (2d ed. 1983)). The doctrine is "designed to avoid repetitious litigation and to promote consistent decision making." Triton Coal , 846 P.2d at 667. "Without something like it, an adverse judicial decision would become little more than an invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if at first you don't succeed, just try again." Entek , 840 F.3d at 1240. The doctrine, therefore, provides "incentive for parties to put their best effort into their initial submissions," encourages litigants to present all available claims and defenses, and avoids wasting judicial resources. Id. at 1242.
[¶27] Typically, the law of the case doctrine "requires a trial court to adhere to its own prior rulings, adhere to the rulings of an appellate court, or adhere to another judge's rulings in the same ... or a closely related case." Triton Coal , 846 P.2d at 668. The doctrine may also give preclusive effect to a legal decision made at one stage of the litigation that goes unchallenged in a subsequent appeal. Id. ; Entek , 840 F.3d at 1242. In this respect, law of the case is related to waiver because it is the litigant's "failure to raise an issue on appeal which gives rise to the preclusive effect of the lower court's ruling[.]" Triton Coal , 846 P.2d at 667-68. A reversal on appeal "affect[s] only those portions of the judgment from which an appeal is actually taken" and does not affect unappealed issues. Id. at 669. Law of the case and waiver apply to unappealed issues and those issues cannot be relitigated on remand or on a second appeal. Id. at 669.
[¶28] Here, neither Berenergy nor Peabody appealed the district court's ruling as to the Thornburg lease. See supra ¶ 7. Accordingly, at first blush, the law of the case applies to the Thornburg lease dispute. Under that doctrine, the district court's ruling that the accommodation doctrine applies is final. The general rule that an unappealed issue may not be addressed on remand, however, is "tempered by the rule that an appeal from a part of a judgment can be taken only if the appealed portion is severable." Triton Coal , 846 P.2d at 669. "In cases where the appealed judgment is not independent from the remainder, the appeal becomes an appeal from the whole judgment, and, consequently, a reversal will extend to the whole judgment." Id. (citing 5 Am. Jur. 2d Appeal and Error § 953 (1962)).
[¶29] Berenergy argues that the district court's resolution of the Thornburg lease dispute in the original proceeding was so interwoven with its resolution of the federal lease disputes that the Berenergy I appeal was an appeal of the whole judgment. According to Berenergy, our order in Berenergy I -requiring dismissal if the BLM could not be joined-applies to the Thornburg lease.
The test of whether a portion of a judgment appealed from is so interwoven with *59 its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked. [I]n order to be severable, and therefore appealable, any determination of the issues so settled by the judgment ... must not affect the determination of the remaining issues whether such judgment on appeal is reversed or affirmed.
Triton Coal , 846 P.2d at 669 (emphasis added; internal quotation marks and citations omitted).
[¶30] In Triton Coal , Husman contracted with mine owner Triton Coal Co. (Triton) to remove dry overburden and topsoil for coal mining. Id. at 666. Husman sued Triton for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation when it determined that the soil was saturated with water. Id. at 667. The district court granted summary judgment in favor of Triton on all counts and Husman appealed. On appeal, Husman did not challenge the summary judgment on its claim that the final survey of material removed was inaccurate and that Triton failed to pay for the material removed (Count II). Id. at 667. This Court reversed and remanded. See Husman, Inc. v. Triton Coal Co. , 809 P.2d 796 (Wyo. 1991). Thereafter, the jury granted breach of contract damages on a special verdict form which allowed the consideration of Count II. Triton appealed, arguing that Count II should not have been submitted to the jury due to application of the law of the case doctrine. TritonCoal , 846 P.2d at 667. Triton contended that because Husman did not appeal the summary judgment as to Count II, the lower court's judgment was law of the case and was not an issue for trial. Id. We applied the severability test to determine whether issues raised in the first appeal[7] were interwoven with Count II, the breach of contract issue that was not appealed. Id. at 670. We concluded that they were not. Id. Thus, we held that the district court's grant of summary judgment with respect to Count II was law of the case and the district court could not retry the issue on remand. Id.
[¶31] Here, despite our Order on Petitions for Rehearing that the Thornburg and federal leases are severable, Berenergy contends that the Thornburg lease dispute is not severable from the federal lease dispute because "the district court expressly held that its ruling concerning the Thornburg lease was based on the 'same rules' it determined to be applicable to the federal lease disputes." We are not persuaded. The fact that the district court applied the accommodation doctrine to all the leases, both federal and private, does not necessarily mean that the private lease dispute was "interwoven" with the federal disputes. The Triton Coal test for severability requires us to determine "whether the matters or issues embraced" in the first appeal "are the same as, or interdependent upon, the matters or issues" which were not appealed. Id. at 669. An appeal is severable if "the part whereby the appellant is aggrieved is so far distinct and independent that it may be adjudicated on appeal without bringing up for review the entire order or judgment." Id.
[¶32] We find that the federal leases and the private Thornburg lease presented distinct issues that were severable. A thorough review of the record reveals that the bulk of the pleadings, arguments, and trial focused on the federal leases. The Thornburg lease may have been somewhat of an afterthought for all involved. The Thornburg lease was, however, separately argued by the parties and separately addressed by the district court. It presented a separate issue. For example, in its amended complaint, Berenergy separately identified its leases and sought a declaration that each lease had priority either because the lease was first in time or because (as was the argument for the Thornburg lease), while not first in time, Peabody could not unreasonably interfere with them. Again, in its motion for partial summary judgment, Berenergy argued that although the Thornburg lease was not first in time, Peabody could not unreasonably interfere *60 with that lease. Berenergy asserted a different argument regarding the first in time federal leases. Likewise, in its pleadings, Peabody addressed the federal leases and the Thornburg lease separately. In its argument regarding the Thornburg lease, Peabody argued that the Coal Lands Act, 30 U.S.C. §§ 83 - 85, applied because the Thornburg lease was "[u]nlike the federal leases" that govern the other wells. In its response to Peabody, Berenergy also separately addressed the Thornburg lease, but lumped it with the federal leases, arguing that for the reasons already specified in its motions, it should prevail.
[¶33] In its order on the parties' motions for summary judgment, the district court also addressed the Thornburg lease separately. It recognized that the original patent from the United States to Jack Thornburg conveyed an express right to extract oil and gas and that "[t]he patent reserved unto the United States all of the coal, which includes the rights necessary to develop the coal as implied under the reasoning in Chartiers [Block Coal Co. v. Mellon , 152 Pa. 286, 25 A. 597 (1893) ]." The district court separately recognized the federal leases stating that they "must be construed as being consistent with the purposes of the MLA [Mineral Leasing Act, 30 U.S.C. §§ 181, et seq. ]." The district court ultimately held that both parties must accommodate one another. This ruling implicitly rejected Peabody's argument for the application of the Coal Lands Act to the Thornburg lease. The district court then held a trial to determine reasonable accommodations and damages. The district court awarded separate damages with respect to the Thornburg lease.
[¶34] Indeed, the parties' appeals in Berenergy I provide compelling evidence of the severability of the federal and Thornburg lease issues. Berenergy appealed only the federal lease issues. Peabody appealed only the portion of the district court's order requiring it to escrow money in the event Berenergy engaged in a water flood recovery operation. See Berenergy I , ¶ 4, 408 P.3d at 399. As we have previously stated, "the issues related to the Thornburg lease were not presented to the Court" in Berenergy I . We have also said our holding in Berenergy I "does not limit the district court's authority to consider the Thornburg lease issues, if the district court finds such consideration appropriate."
[¶35] The Thornburg lease issue was severable from the federal lease issues. Our ruling in Berenergy I applies only to the federal leases. Relitigation of the Thornburg lease dispute is not necessary to avoid a "manifest injustice." See Entek , 840 F.3d at 1242. Both parties have had ample opportunity to set forth their relative positions throughout extensive litigation and have adequately done so. Accordingly, we find that the district court did not abuse its discretion when it applied the law of the case doctrine. The district court's ruling that the accommodation doctrine applies to the Thornburg lease is correct.
CONCLUSION
[¶36] The BLM is not an indispensable party to the Thornburg lease dispute, and the district court may fully resolve that dispute without its participation. Further, the district court was correct when it concluded that law of the case principles apply-the accommodation doctrine governs the parties' rights. We remand for proceedings consistent with this opinion.

The projected cost of this process was $13.1 million, and the district court ordered this amount to be escrowed. The release of money would be subject to Berenergy obtaining permission for the project from the Wyoming Oil and Gas Conservation Commission (WOGCC) and limited to reimbursement of actual expense to implement the process. Following our decision in Berenergy I , the BLM ordered Peabody to deposit this sum into an escrow account to reimburse Berenergy for costs the project might entail if the Wyoming State Office of the Bureau of Land Management designates a secondary recovery unit in the area covering the leases and the WOGCC approves the project.

Rule 19 has been amended since this lawsuit was filed in 2014. The amendment was effective March 1, 2017, and contained very few substantive changes. Compare W.R.C.P. Rule 19 (2014) with W.R.C.P. Rule 19 (2017). We apply the rule in effect at the time the lawsuit was filed. See DNW v. Wyoming Dep't of Family Services , 2007 WY 54, ¶ 9, 154 P.3d 990, 992 (Wyo. 2007) ; McKennan v. Wyoming Sawmills, Inc. , 816 P.2d 1303, 1303 n.1 (Wyo. 1991).

As noted, the district court directed Peabody to deposit approximately $13.1 million in an escrow fund as part of its ordered accommodation. Although Peabody appealed that direction in Berenergy I , it did not do so in this appeal. In any event, the BLM has rendered a decision with respect to the disputed federal leases ordering this same accommodation.

The United States District Court for the District of Wyoming has ruled that federal question jurisdiction does not automatically exist merely because federal mineral leases are at issue. BTU W. Res., Inc. v. Berenergy Corp. , 31 F. Supp. 3d 1346 (D. Wyo. 2014).

Although Berenergy argues that the law of the case does not apply, it does not contend that the question of whether the accommodation doctrine applies to the Thornburg lease should be relitigated. Berenergy claims that since the federal and Thornburg lease issues are not severable, the Thornburg lease dispute must be dismissed by the district court along with the federal lease dispute under Berenergy I .

Peabody argues in the alternative that if the judgment is reopened, the Coal Lands Act should be applied.

Those issues were Husman's claims for breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation. Id. at 670.