# UNITED STATES *v.* MITCHELL.

## APPEAL FROM THE COURT OF CLAIMS.

No. 180.  Argued January 25, 1907.—Decided March 18, 1907.

Section 7 of the act of April 26, 1898, 30 Stat. 364, was not enacted to give increased pay for the discharge of the ordinary duties of the service but to give compensation for the greater risk and responsibility of active military command; and the assignment under orders of competent authority must be necessary and non-gratuitous.

A second lieutenant of the United States army who in the absence of the captain and first lieutenant assumes command of the company in regular course under § 253 of the Army Regulations of 1895, is not exercising under assignment in orders issued by competent authority, a command above that appertaining to his grade within the meaning of § 7 so as to obtain the benefit of the statute, even though a regimental special order may issue directing him to assume the command. and this action may be attempted to be ratified by special order of the commanding general where it is not apparent that any necessity for special direction existed.

Where the United States filed no set-off or counterclaim the court will not overhaul the allowance made to an officer of the army by the auditor of the War Department. An overpayment erroneously made does not determine the legality of the claim.

41 C. Cl. 36, reversed.

THE Court of Claims filed the following findings of fact and conclusions of law:

"I. The claimant, Donn C. Mitchell, was enrolled in the Volunteer Army, during the Spanish war, as second lieutenant of Troop E, First Ohio Volunteer Cavalry, on the 3d day of May, 1898. He served in the grade of second lieutenant until promoted to first lieutenant October 20, 1898. He was mustered out as first lieutenant October 23, 1898. His entire service was within the limits of the United States.

"II. While on duty as second lieutenant of the First Ohio

Volunteer Cavalry at Huntsville, Ala., during the Spanish war, claimant received the following order:

" 'Headquarters 1st Ohio Volunteer Cavalry,
" 'Camp Wheeler, Huntsville, Ala., August 24, 1898.
" 'Special Orders, ⎰
" 'No. 44.   ⎱

" 'I. 1st Lieut. William D. Forsyth, 1st Ohio Volunteer Cavalry, having been ordered before a board for examination for appointment as second lieutenant in the Regular Army, is hereby relieved of the command of Troop E. He will turn over the property, funds, and records of the troop to his successor.

" 'II. 2d Lieut. Donn C. Mitchell, 1st Ohio Volunteer Cavalry, is hereby appointed to the command of Troop E. He will receipt to Lieut. Forsyth for the property and funds pertaining to the troop.

" 'By order of Lieut. Col. Day:

" '(Signed)      A. C. ROGERS,
" 'Captain and Regtl. Adj. 1st Ohio Vol. Cav.'

"This order was approved by the commanding general in the field in the following orders:

" 'Headquarters Fourth Army Corps,
" 'Camp Wheeler, Huntsville, Ala., September 2, 1898.
" 'Special Orders, ⎰
" 'No. 97.   ⎱

*     *     *     *     *     *     *     *

" 'II. It appearing from evidence that the following-named officers of the First Ohio Volunteer Cavalry have exercised the functions of commanders above that pertaining to the grades held by them from and after the dates set opposite their respective names. the assignment thereto contemplated by General Orders, No. 86, current series, Adjutant-General's Office, is confirmed, namely:

*     *     *     *     *     *     *     *

" '2d Lieut. Donn C. Mitchell, as captain, from August 24th, 1898.

```
*    *    *    *    *    *    *    *
```

" 'By command of Major-General Coppinger:

" ' (Signed)        CLARENCE K. EDWARDS,

" ' *Assistant Adjutant-General.'*

"Under these orders claimant exercised command of Troop E from August 26, 1898, to October 23, 1898, when he was mustered out with his regiment.

"So much of G. O. No. 86, A. G. O., of 1898, as relates to the matter of pay for exercising a higher command, is as follows:

General Orders, }      " 'Headquarters of the Army,
    No. 86.     }            " 'Adjutant General's Office,
                        " 'Washington, July 2, 1898.

" 'I. In section 7 of the act "For the better organization of the line of the Army of the United States," approved April 26, 1898, it is provided "That in time of war every officer serving with troops operating against an enemy who shall exercise, under assignment in orders issued by competent authority, a command above that pertaining to his grade, shall be entitled to receive the pay and allowances of the grade appropriate to the command so exercised."

" 'The Attorney General has held that this clause "was intended to apply to all instances where the troops of the United States are assembled in separate bodies, such as regiments, brigades, divisions, or corps, for the purpose of carrying on and bringing to a conclusion the war with Spain," but that "all service in the Army at the present time is not to be considered as operating against an enemy. Troops and their officers on the western frontiers, performing the same service as garrisons which is requisite in time of peace, and in no wise considered a part of the Army assembled to carry on the war with Spain, would not be within the meaning of the act."

" 'To entitle an officer to the pay of a grade above that

actually held by him the assignment in orders under the clause cited must be by the written order of the commanding general in the field or the Secretary of War, and no pay or allowances of a higher grade than that actually held by an officer will be paid under this provision except when a certified copy, in duplicate, of such order, with statement of service, is filed with the paymaster. . . .

" General Orders, No. 86, was amended by General Orders, No. 155, dated September 27, 1898, by striking out the above portion of the order, and on the same date Circular No. 18, promulgating this order, was amended by striking out the portion above quoted and inserting in lieu thereof the following language, to wit:

" 'To entitle an officer to the pay of a grade above that actually held by him under section 7 of the act of Congress approved April 26, 1898, he must be assigned in orders issued by competent authority to a command appropriate to such higher grade of troops operating against the enemy.' (Circ. No. 39, A. G. O., Sept. 27, 1898.)

"At the time that he assumed and during the time that he exercised command of troop E he was the senior officer present with the troop.

"The Treasury Department, from the decision of the Comptroller of March 31, 1899 (5 Comp. Dec., 641), to the decision of the court in the *Humphreys case* (38 C. Cls. R., 689) on May 25, 1903 (pp. 15–16), recognized this sort of orders, so subsequently confirmed, as sufficient authority for the higher pay. Under similar orders, subsequently affirmed, all officers were paid either by the Pay Department or by the Treasury Department in claims presented after the war.

"III. From August 26, 1898, to October 19, 1898, claimant was originally paid the rate due a second lieutenant of cavalry, and from October 20 to October 23, 1898, he originally received the pay of a first lieutenant of cavalry. He subsequently filed a claim for additional pay for command of the troop and was paid by the Auditor for the War Department,

October 30, 1899, the pay of a captain for the entire period from August 26, 1898, to October 23, 1898.

"IV. On the 14th day of September, 1898, a furlough of thirty days for said regiment was authorized under General Orders, No. 130, A. G. O., 1898, and amendatory circulars. The above-named claimant did not receive such furlough. From the beginning of the furlough to September 26, 1898, the said claimant was sick in Mount Carmel Hospital, Columbus, Ohio. From September 26, 1898, to the end of the furlough period he was detained for duty and actually performed duty. During the whole furlough period he was at all times subject to the orders of his superior officers until final muster out. Claimant was first taken sick at Huntsville, Ala., before the furlough, but accompanied his regiment to the home station at Columbus, Ohio, where he was placed in the hospital by officers of said regiment, the surgeon being absent. While at the hospital claimant performed some military service by directing a clerk employed by him for that purpose.

"V. If claimant is entitled to retain the pay already received by him, the amount due him as extra pay at the rate due a captain, mounted, is $166.66.

"If entitled to extra pay at the rate due a second lieutenant, mounted, the amount due is $125.

"If entitled to extra pay and not entitled to retain the pay of a captain as stated in finding 3, there should be deducted from the extra pay allowed the sum of $79.44."

The court rendered judgment for the claimant in the sum of $166.66. 41 C. Cl. 36.

*Mr. Assistant Attorney General Van Orsdel*, with whom *Mr. George M. Anderson* was on the brief, for appellant:

The Army Regulations provide no command for a subaltern; the lowest officer in rank provided for in that respect is a captain. The claimant, therefore, whose grade was that of a second lieutenant of cavalry, had no command pertaining to his grade, and his case does not come within the purview of

the act. The statute does not say that increased compensation shall be received for exercising higher duties or exercising a command, but for exercising a higher command. It does not refer to the commander, but to the troops which he commands. *Humphreys* v. *United States*, 38 C. Cl. 689.

The responsibilities of higher command in this case were no greater than in ordinary times of peace. *Truitt* v. *United States*, 38 C. Cl. 398.

Under General Orders, No. 86, the assignment of the claimant to the command of his company could have been legally ordered only by the commanding general in the field or the Secretary of War, and a certified copy in duplicate should have been filed with the paymaster in order to entitle him to the higher pay. The general order also, from language used, evidently contemplated the issuance of the order of assignment prior to the assumption of the higher command.

The commanding general in the field had no power to delegate his authority to assign an officer to a higher command, nor had he the power to subsequently confirm and ratify such unauthorized action by any officer under his command.

*Mr. George. A. King*, with whom *Mr. William B. King* and *Mr. Clark McKercher* were on the brief, for appellee:

The right to some extra pay is conceded, and the question is, what is the proper rate? The answer of the Court of Claims is that it shall be the rate to which the claimant was entitled and which he received at the time of his muster out and discharge from the service as well as for about two months previous. This includes the time during which his regiment was nominally on furlough, while the claimant was held for active duty and actually discharged duty as the commanding officer of the company.

This conclusion is in accordance with the law whether the rate properly allowable be that of the pay to which the claimant was entitled at the time of his muster out and discharge from the service, as this court decided in the case of the similar

statute passed for the Mexican War, in *United States* v. *North,* 112 U. S. 510, affirming 19 C. Cl. 254, or whether the proper rate of pay be that to which he was entitled during the nominal furlough of his regiment, as decided by the Court of Claims under these statutes in *Terrell* v. *United States,* 40 C. Cl. 78.

There has been a contemporaneous and continuous construction of the statute. To reverse this construction as the Government now contends at this late day, would be to overturn thousands of settlements already made. This would result most unequally.

As to the force to be given to contemporaneous and continuous construction see *United States* v. *Moore,* 95 U. S. 763; *United States* v. *Alabama R. R. Co.,* 142 U. S. 621; *United States* v. *Finnell,* 185 U. S. 244.

Clearly, the command was "above that pertaining to his grade." He was only a second lieutenant, the lowest grade of commissioned officer, and for a short time before his discharge from the service, a first lieutenant; but he was, at the time of his muster out and for about two months previous, in actual command of his company, a command appropriate to the grade of captain, as shown by § 14, Army Regulations.

There was a complete literal compliance with the statute. His assignment to the command of the company was made "in orders" of the most formal and peremptory character first issued by the commanding officer of his regiment and subsequently confirmed by the major-general commanding the corps.

The claimant exercised a higher command, and he exercised it under orders issued by competent authority, and this is sufficient. *Thomas* v. *United States,* 39 C. Cl. 1, 9.

There is no need here for interpretation or construction of the statute. The language is plain and unambiguous. The orders are here under unquestionable authority. The will of Congress expressed in the statute is therefore met and

the right to higher pay follows.  *Lake County* v. *Rollins*, 130 U. S. 671.

Mr. Chief Justice Fuller, after. making the foregoing statement, delivered the opinion of the .court.

It is conceded by the Government that claimant is entitled to extra pay, so that the question is to what amount. Was he entitled to receive one month's extra pay of a captain of cavalry mounted ($166.66) or one month's extra pay of a second lieutenant of cavalry mounted ($125)?·

We lay out of view the suggestion that if claimant were entitled to the extra pay of a second lieutenant of cavalry only, then that a certain sum or sums ought to be deducted as having been previously improvidently paid by the Auditor for the War Department. The United States filed no set-off or counterclaim, and we think we cannot overhaul the allowance by the Auditor for the War Department in the circumstances. Such payment, if made in error, did not determine the question before us within *United States* v. *Hite*, 204 U. S. 343.

The claim is made under section 7 of the act of April 26, 1898, 30 Stat. 364, 365, c. 191, reading as follows: "That in time of war every officer serving with troops operating against an enemy who shall exercise, under assignment in orders issued by competent authority, a command above that pertaining to his grade, shall be entitled to receive the pay and allowances of the grade appropriate to the command so exercised."

The main question is whether claimant exercised, "under assignment in orders issued by competent authority, a command above that pertaining to his grade?" When he assumed command of his company, August 26, 1898, he was the senior officer present, the captain and the first lieutenant being absent. Section 253 of the Army Regulations of 1895, then in force, provided: "In the absence of its captain, the command of a company devolves upon the subaltern next in rank who is serving with it, unless otherwise specially directed."

This embodied the rule of succession by seniority prevailing in the ordinary course of military affairs, while, at the same time, it recognized that there might be exceptions, in respect of which special direction was required, and section 7 of the act of April 26, 1898, applied to such cases.

The exceptions spring from necessity, and where it is apparent that that does not exist, orders relied on as the basis for increased pay under section 7 are ineffectual for that purpose.

In *Humphreys* v. *United States*, 38 C. Cl. 689, the Court of Claims held that what the law contemplated was "necessary and not gratuitous assignments, and only such as would be for the good of the service and the vigorous prosecution of the war." Chief Justice Nott, speaking for the court, said: "It seems to the court incontrovertible that the words 'under assignment in orders issued by competent authority' constitute the controlling limitation of the statute; and the limitation implies that the benefits of the statute extend only to cases where such an order is necessary to impose the burden of the higher command upon an officer." We concur in that view, and tested by it, Special Orders No. 44, dated August 24, 1898, whereby the lieutenant colonel of the First Ohio Volunteer Cavalry announced that First Lieutenant Forsyth was relieved of the command of troop E, and, as incident thereto, that Second Lieutenant Mitchell was appointed to the command, cannot be considered as an "assignment in orders issued by competent authority," within section 7. That section was not enacted to give increased pay for the discharge of the ordinary duties of the service, but to give compensation for the greater risk and responsibility of active military command, and no assignment in orders when unnecessary to that end can make a case within the statute. *Truitt* v. *United States*, 38 C. Cl. 398, 406; *Parker* v. *United States*, 1 Pet. 293, 297. Here the additional duties discharged by Lieutenant Mitchell were "the ordinary incidental duties of military official life which go with such officer's commission." 38 C. Cl. 692.

The attempted confirmation by Special Orders No. 97 must fail of effect under section 7 for like reasons.

Other questions argued at the bar need not be discussed.

*Judgment reversed and cause remanded, with a direction to enter judgment in favor of claimant for $125.*