# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 125

APRIL TERM, A.D. 2020

September 25, 2020

ALEXANDER REED MANTLE and
MARJORIE M. MANTLE,

Appellants
(Plaintiffs),

v.

NORTH STAR ENERGY &
CONSTRUCTION, LLC; GARY W.
GARLAND; RAYMOND W.
GARLAND; MATT R. GARLAND;
THREE WAY, INC.; HOT IRON, INC.;
MGM ENTERPRISES, INC.; GT
INVESTMENTS, INC.; and WYODAK
ENERGY SERVICES, LLC,

Appellees
(Defendants).

S-20-0019

*Appeal from the District Court of Johnson County*
The Honorable John G. Fenn, Judge

*Representing Appellants*:
Stephen R. Winship, Winship & Winship, P.C., Casper, Wyoming.

*Representing Appellees Gary W. Garland, Hot Iron, Inc., and GT Investments, Inc.*:
Kim D. Cannon and Codie D. Henderson, Davis & Cannon, LLP, Sheridan, Wyoming. Argument by Mr. Henderson.

*Representing Appellees Raymond W. Garland, Matt R. Garland, Three Way, Inc., and MGM Enterprises, Inc.*:
Judith Studer, Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

*Representing Appellee North Star Energy & Construction, LLC*:
No appearance.

*Representing Appellee Wyodak Energy Services, LLC*:
No appearance.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ,** Justice.

[¶1]   In the third appeal of this case, Alexander Reed Mantle and Marjorie M. Mantle (collectively "the Mantles") contest the district court's use of a judgment against Mr. Mantle to set off judgments they had against Ray and Gary Garland.  The Mantles also claim the district court erred by failing to recognize their right to the proceeds from a settlement of a third-party action against Karl Killmer and Killmer & Associates (collectively Mr. Killmer).

[¶2]   We affirm.

## ISSUES

[¶3]   The dispositive issues in this case are:

1.  Did the district court properly set off the judgments?

    a.  Does the law of the case bar Ray and Gary from claiming setoffs?
    b.  Did Ray and Gary waive their setoff claims by failing to plead them in their answer or counterclaims?
    c.  Does the required mutuality of obligations exist?
    d.  Do the equities of the case support the setoffs?
    e.  Did the district court err by granting the setoffs when Ray and Gary's motion for setoff was combined with a motion for a protective order and they did not confer with the Mantles prior to filing the motions?
    f.  Is an additional procedural step required to implement the setoffs so the Mantles can claim an exemption?

2.  Was the Mantles' claim regarding the Killmer Settlement Funds properly before the district court?

## FACTS

[¶4]   The underlying facts of this case are set out in detail in *Mantle v. North Star Energy & Constr., LLC,* 2019 WY 29, 437 P.3d 758 (Wyo. 2019) (*Mantle I*), and *Mantle v. North Star Energy & Constr., LLC,* 2019 WY 54, 441 P.3d 841 (Wyo. 2019) (*Mantle II*).  We will, therefore, recite only those facts relevant to the issues presented in this appeal.

[¶5]   The Garland brothers, Ray, Gary, and Matt, owned separate oil and gas service and construction companies – Three Way, Inc., Hot Iron, Inc., and MGM Enterprises, Inc., respectively.  *Mantle I,* ¶¶ 1, 5, 437 P.3d at 768-69; *Mantle II,* ¶ 3, 441 P.3d at 844.  In 2011, they formed North Star Energy & Construction, LLC (North Star), with the three companies as members (Members).  *Mantle I,* ¶¶ 5-7, 437 P.3d at 769.  Mr. Mantle was the

1

president of North Star, and Mr. Killmer performed accounting services for North Star and the Members. *Mantle I,* ¶ 6, 437 P.3d at 769; *Mantle II,* ¶ 3, 441 P.3d at 844.

[¶6]   In 2014, Mr. Mantle and Mr. Killmer agreed to purchase North Star from the Members. *Mantle II,* ¶ 3, 441 P.3d at 844. We summarized the transaction in *Mantle II*:

> The parties executed a Memorandum of Understanding (MOU) that memorialized their agreement, including Mr. Killmer's and [Mr. Mantle's] personal guarantees of $6.1 million of the purchase price. Mr. Mantle and Mr. Killmer negotiated a $3-million loan from First Northern Bank (FNB) to fund the down payment. Ultimately, the transaction took the form of a leveraged buyout when the FNB loan was made to North Star.

*Id.* (citations omitted).

[¶7]   North Star's financial position deteriorated during 2014. *Mantle II,* ¶ 4, 441 P.3d at 844. In December 2014, "the Garlands stepped back in to try and save North Star," but were unsuccessful. *Id.* Mr. Mantle and Mr. Killmer refused to execute the documents to finalize the purchase of North Star from the Members. *Mantle I,* ¶ 30, 437 P.3d at 774. North Star did not pay the $3 million FNB loan, so the Mantles purchased it and stepped into FNB's shoes as creditors of North Star. *Mantle I,* ¶ 33, 437 P.3d at 775; *Mantle II,* ¶ 4, 441 P.3d at 844.

[¶8]   Litigation between the Garlands, the Mantles, and Mr. Killmer began in May 2015. *Mantle I,* ¶ 42, 437 P.3d at 777; *Mantle II,* ¶ 5, 441 P.3d at 844. The Mantles sued the Garlands, the Members, and North Star (collectively "the Defendants"). *Id.* They sought, *inter alia,* repayment of the FNB loan and to set aside as fraudulent various transfers from North Star to the Garlands and the Members. *Id.* The Members countered for breach of the MOU and to collect on Mr. Mantle's and Mr. Killmer's $6.1 million personal guarantees. *Id.* The Members and North Star also sued Mr. Killmer for accountant malpractice. *Mantle I,* ¶ 42, 437 P.3d at 777; *Mantle II,* ¶ 6, 441 P.3d at 844.

[¶9]   Mr. Killmer settled with the Members and North Star and assigned to them his claims against his malpractice carrier for failing to provide a defense or insurance coverage. *Mantle II,* ¶ 6, 441 P.3d at 844. The Garlands and North Star eventually settled with Mr. Killmer's malpractice carrier. *Id.* "As part of the settlement, North Star received $121,271, which, by order of the district court, was deposited into the court registry on February 22, 2017. The Garland brothers, and their respective companies, split the rest." *Id.*

[¶10]  The district court held a bench trial on the remaining claims. *Mantle II,* ¶ 7, 441 P.3d at 844. It awarded the Mantles a $2,712,832.22 judgment against North Star on the FNB loan and a $250,000 and a $307,000 judgment against Gary and Ray, respectively,

2

for fraudulent transfers of North Star assets. *Mantle II,* ¶ 7, 441 P.3d at 884. The district court ruled Mr. Mantle had breached the MOU and awarded the Members a $6,110,000 judgment on his personal guarantee. *Id.*; *Mantle I,* ¶ 48, 437 P.3d at 778.

[¶11]   In the "Order After Bench Trial," the district court stated in a footnote:

> The [c]ourt considered offsetting [the judgment against Gary] against the judgment against Alex Mantle[.] However, both Alex and Marjorie Mantle brought this suit to set aside the fraudulent transactions, but the judgment for breach of contract is only against Alex Mantle. Thus, it would not be appropriate to offset the entire amount of the fraudulent conveyance against the judgment against Alex Mantle. This does not preclude the Defendants from executing against any part of these funds that may belong solely to Alex Mantle.

[¶12]   Hot Iron and Three Way thereafter assigned portions of their judgment against Mr. Mantle to Ray and Gary. In a motion to alter or amend the judgment under Wyoming Rule of Civil Procedure (W.R.C.P.) 59(e), Ray and Gary requested setoffs, claiming the assignments created the requisite mutuality of obligations. The district court denied the Rule 59(e) motion, and Ray and Gary appealed in *Mantle I. Mantle II,* ¶¶ 12-13, 441 P.3d at 845.

[¶13]   While that appeal was pending, Ray filed in the district court a "Motion for Protective Order with Respect to Discovery in Aid of Execution, Together with Motion to Allow Setoff and Declare Judgment Satisfied." Gary joined the motion for setoff. The district court ruled, in the "Order on Pending Motions," the judgments against Ray and Gary would be set off against a portion of the judgment against Mr. Mantle. It also granted Ray's motion for a protective order, stating: "[H]aving found that the judgment has been satisfied through a setoff, there is no need to allow further post-judgment discovery from Ray[.]" Ray and Gary then withdrew the setoff issue from their appeal. *Mantle II,* ¶ 13, 441 P.3d at 845.

[¶14]   In *Mantle II,* ¶ 18, 441 P.3d at 846, we ruled the district court did not have jurisdiction to order the setoffs while the matter was on appeal. We reversed that aspect of the "Order on Pending Motions" and remanded to the district court for further proceedings. *Id.* The Mantles also raised issues regarding the Killmer Settlement Funds in *Mantle II,* ¶ 19, 441 P.3d at 847. They contended that only North Star, not the Members, had standing to assert a claim against Mr. Killmer for malpractice, so all the settlement proceeds should be paid to North Star's creditors. *Id.,* ¶¶ 19-20, 441 P.3d at 847. We held there was no final appealable order on the issue and remanded for further proceedings. *Id.,* ¶¶ 23-24, 441 P.3d at 847-48.

3

[¶15] On remand, the district court granted the setoffs, adopting the rationale in the "Order on Pending Motions" rendered while it was without jurisdiction over the issue. The Mantles asked the district court to make additional findings "as to what facts still needed to be determined" with respect to the Killmer Settlement Funds. The court ruled the issue was not properly before it and denied the motion. The Mantles appealed.

[¶16] Additional facts will be set out, as necessary, in the discussion of the issues.

## DISCUSSION

### I. Setoffs

#### A. Law of the Case

[¶17] The Mantles maintain the district court should have applied the law of the case doctrine to bar Ray and Gary from asserting, on remand, their claims for setoff. Specifically, they argue that, by abandoning their appeal in *Mantle I,* Ray and Gary waived further consideration of the issue.

[¶18] "The decision whether to apply the law of the case doctrine is discretionary, but once a court applies the doctrine, the actual application is reviewed as a matter of law." *BTU Western Res., Inc. v. Berenergy Corp.,* 2019 WY 57, ¶ 24, 442 P.3d 50, 57-58 (Wyo. 2019).

> Under the "law of the case" doctrine, a court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation. The "law of the case" is a doctrine designed to avoid repetitious litigation and to promote consistent decision making. As such, it is in the same family as res judicata, collateral estoppel, and stare decisis.

*Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 667 (Wyo. 1993) (citing 1B James W. Moore, Jo Desha Lucas & Thomas S. Currier, Moore's Federal Practice ¶ 0.404[1] (2d ed. 1983)). *See also, Lieberman v. Mossbrook,* 2009 WY 65, ¶ 28, 208 P.3d 1296, 1305 (Wyo. 2009) ("Under the law of the case doctrine, a court's decision on an issue of law at one stage of a proceeding is binding in successive stages of the litigation."). Typically, the law of the case doctrine requires a court to adhere to its prior rulings, the ruling of an appellate court, or another judge's rulings in the case or a closely related case. *Lieberman,* ¶ 28, 208 P.3d at 1305.

[¶19] A lesser utilized aspect of the law of the case doctrine is more akin to the law of waiver. *Triton Coal,* 846 P.2d at 668. It involves a "litigant's failure to raise an issue on

4

appeal which gives rise to the preclusive effect of the lower court's ruling[.]" *Id.* In *Triton,* we described the general rule as:

> "[Q]uestions assigned as error are deemed to have been abandoned or waived where they are not urged or discussed on appeal by brief or argument, or are not sufficiently so discussed[.]"

*Id.* (quoting 5B C.J.S. *Appeal and Error* § 1803 at 98 (1958)). *See also, Dworkin v. L.F.P., Inc.,* 839 P.2d 903, 908 (Wyo. 1992) (appellant's failure to raise issues on appeal as to other claims resolved on summary judgment "constitute[d] an abandonment of those issues"); *BTU Western Res.,* ¶ 27, 442 P.3d at 58 ("The [law of the case] doctrine may also give preclusive effect to a legal decision made at one stage of the litigation that goes unchallenged in a subsequent appeal.").

[¶20]  There are, however, exceptions to the law of the case doctrine. *Lieberman,* ¶ 29, 208 P.3d at 1305-06 (citing *Wessel v. City of Albuquerque,* 463 F.3d 1138, 1144 (10th Cir. 2006)). "One of those exceptions applies when the evidence in a subsequent [proceeding] is substantially different from that presented in the earlier proceeding." *Lieberman,* ¶ 29, 208 P.3d at 1306. "'Additionally, the law of the case doctrine applies only to issues actually decided, not to issues left open.'" *In re Guardianship & Conservatorship of Parkhurst,* 2010 WY 155, ¶ 15, 243 P.3d 961, 966 (Wyo. 2010) (quoting *Lieberman*, ¶ 29, 208 P.3d at 1306, which cited 18B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE:  Jurisdiction § 4478 (2d ed. 2002)). In *Lieberman,* ¶¶ 27-34, 208 P.3d at 1305-07, we refused to apply the law of the case to limit the district court's power to decide an issue of law because the prior rulings were limited in scope.  In *Parkhurst,* ¶¶ 15-16, 243 P.3d at 966-67, we determined the district court's decision to appoint a guardian ad litem at one stage of the proceeding was not determinative of the later question regarding whether it was necessary to appoint a guardian and conservator for the ward. *Id.*

[¶21]  Likewise, the district court properly refused to apply the law of the case to bar Ray's and Gary's setoff claims because their second motion for setoff was brought in a much different procedural posture than the first.  Their first motion for setoff was made pursuant to W.R.C.P. 59(e).[1]  They asked the court to "address and give effect to [Ray's and Gary's] equitable defenses of equitable estoppel and unclean hands" and award the setoffs.

[¶22]  Motions under Rule 59(e) are limited in scope.

---

[1] Rule 59(e) states:

> (e) *Motion to Alter or Amend a Judgment*. – A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

5

"A Rule 59(e) motion is only appropriate if one of three grounds exists: 1) the availability of new evidence not previously available; 2) an intervening change in controlling law, or 3) the need to correct a clear error of law or to prevent manifest injustice. It is not a mechanism to relitigate issues that the court has already decided, nor should parties make additional arguments which should have been made before judgment."

*Evans v. Moyer,* 2012 WY 111, ¶ 12, 282 P.3d 1203, 1208 (Wyo. 2012) (quoting *Ragsdale v. Hartford Underwriters Ins. Co.*, 2007 WY 163, ¶ 5, 169 P.3d 78, 80 (Wyo. 2007), *overruled on other grounds by Essex Holding, LLC v. Basic Props., Inc.,* 2018 WY 111, ¶¶ 34, 40, 427 P.3d 708, 718, 721 (Wyo. 2018) (other citations omitted)). *See also, Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) (applying the same grounds as Wyoming to motions under Federal Rule of Civil Procedure 59(e)). The issue initially on appeal in *Mantle I* was whether the district court properly denied Ray and Gary's Rule 59(e) motion to alter and amend the bench trial order. *Mantle II,* ¶¶ 12-13, 441 P.3d at 845.

[¶23]   In Ray and Gary's later motion for setoff, they relied on the district court's inherent power to enforce its judgment by ordering an equitable setoff. *See Hurd v. Nelson,* 714 P.2d 767, 771 (Wyo. 1986) ("Courts have inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so." (citation and quotation marks omitted)); *Cargill, Inc. v. Mountain Cement Co.,* 891 P.2d 57, 67 (Wyo. 1995) ("Possessing equitable jurisdiction, the district court has the inherent power to allow or compel an equitable set-off."). In ruling on the motion for equitable setoff, the district court had before it the assignments and full briefing of the matter. The district court concluded the equities justified offsetting the judgments. Following our ruling in *Mantle II,* ¶ 18, 441 P.3d at 846, that the district court did not have jurisdiction when it entered the "Order on Pending Motions," the court again considered the setoff issue.[2] It granted the setoffs, expressly relying upon the rationale in the "Order on Pending Motions."

[¶24]   In sum, the district court could have granted Ray and Gary's Rule 59(e) motion only if the limited grounds set out in *Evans* were met, while their second motion for setoff was

---

[2] The Mantles claim that by citing to *Rock v. Lankford,* 2013 WY 61, ¶ 18, 301 P.3d 1075, 1080 (Wyo. 2013), in *Mantle II,* ¶ 18, 441 P.3d at 846, we directed the district court to dismiss the setoff issue on remand. It is true that *Rock* states: "If a judgment below was rendered without jurisdiction, an appellate court must ordinarily reverse and remand for dismissal." *Rock,* ¶ 18, 301 P.3d at 1080 (citations and quotation marks omitted). However, in *Mantle II,* we were only using that case as general authority to remand for further proceedings. *Rock,* ¶ 43, 301 P.3d at 1086, was subject to dismissal because the district court did not have jurisdiction over the original action; here, the district court lacked jurisdiction only because the matter was on appeal. *Mantle II,* ¶ 18, 441 P.3d at 846.

6

based upon the broad equitable jurisdiction of the court. Given the scopes of the two setoff motions were very different, the law of the case did not bar the district court's consideration of the Garlands' requests for setoff on remand.

[¶25] Furthermore, application of the law of the case doctrine is discretionary. *Lieberman,* ¶ 28, 208 P.3d at 1305. *See also, BTU Western Res.,* ¶ 24, 442 P.3d at 57 ("The decision whether to apply the law of the case doctrine is discretionary[.]" (citation omitted)). The doctrine merely expresses a practice of the courts to generally "'refuse to reopen what has been decided.'" *Lieberman,* ¶ 28, 208 P.3d at 1305 (quoting *Brown v. State,* 953 P.2d 1170, 1174 (Wyo. 1998)). The district court's power to rehear an issue is not limited by the doctrine. *Lieberman,* ¶ 28, 208 P.3d at 1305. As our ruling in *Mantle II* indicated, we fully expected the district court to consider the setoff issue on remand.

### B. Waiver

[¶26] The Mantles claim Ray and Gary waived their rights to setoff by failing to specifically plead them as counterclaims. In other words, the Mantles argue the setoffs were compulsory counterclaims and the failure to properly plead means the claims are barred. *See generally, Lane Co. v. Busch Dev. Inc.,* 662 P.2d 419, 423-24 (Wyo. 1983) ("Ordinarily, a claim which is a compulsory counterclaim under F.R.C.P. 13(a) or W.R.C.P. 13(a), but is not brought, is thereafter barred."); 20 Am. Jur. 2d., *Counterclaim, Recoupment & Setoff* § 107 (2020) ("A compulsory counterclaim that is not stated prior to the conclusion of the action by judgment is generally barred in a subsequent or independent action. The failure to file the counterclaim is res judicata of the relief that might have been obtained by the counterclaim.") (footnotes omitted). Whether Ray and Gary employed a proper procedure to request their setoffs is a question of law which we review de novo. *See generally, Kimzey v. Kimzey,* 2020 WY 52, ¶ 13, 461 P.3d 1229, 1235 (Wyo. 2020) (stating that questions of law are subject to de novo review) (citing *Walker v. Walker,* 2013 WY 132, ¶ 44, 311 P.3d 170, 179 (Wyo. 2013); *Swaney v. Dep't of Family Servs.,* 2011 WY 105, ¶ 3, 256 P.3d 514, 515 (Wyo. 2011)).

[¶27] Black's Law Dictionary 1581 (10th ed. 2014) provides two definitions of the term "set-off": 1. "A defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim"; or 2. "A debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." Under the first definition, a claim for a setoff is a true counterclaim, i.e., the parties have existing independent claims against each other that will be litigated in the action.[3]

> A claim for set-off is an independent action which may be raised as a counterclaim. It is a claim for affirmative relief,

---

[3] The question of whether counterclaims are compulsory or permissive is governed by W.R.C.P. 13. *Gas Sensing Tech. Corp. v. New Horizon Ventures Pty Ltd,* 2020 WY 114, ¶¶ 27-29, __ P.3d ____ (Wyo. 2020).

rather than a defense. Generally, set-off must rest on a claim enforceable in its own right, and a party cannot avail itself of the right to set-off unless it has a legally subsisting cause of action in its favor on which it could maintain an independent action. In this regard, a defendant who pleads a set-off occupies substantially the position of a plaintiff.

80 C.J.S. *Set-off and Counterclaim* § 3 (2019). We agree this type of claim for a setoff "is a required pleading." *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.,* 818 P.2d 1137, 1140 (Wyo. 1991) (citing W.R.C.P. 13 and *United States v. Mitchell,* 205 U.S. 161, 27 S.Ct. 463, 51 L.Ed. 752 (1907)). However, only the substantive counterclaim which is the basis for the setoff must be pled. Moreover, as discussed below, this requirement of pleading a counterclaim does not apply to the second definition of setoff.

[¶28] We discussed the requirement of pleading a substantive counterclaim to provide a basis for a setoff in *Mad River Boat Trips,* 818 P.2d at 1137-38. There, the district court issued a judgment requiring the appellant to refund payments to the appellee. The appellant sought to set off its attorney fees and other damages against the amount it was ordered to refund. *Id.* at 1138. We ruled a setoff was not proper because the appellant did not plead claims asserting its right to attorney fees and other damages. *Id.* at 1140.

[¶29] In contrast, the counterclaims which provided the basis for the setoff in *Hollon v. McComb,* 636 P.2d 513 (Wyo. 1981), were properly pled. The purchasers bought a home that was not complete. *Id.* at 514. They gave the seller a large down payment and a promissory note and mortgage for the balance of the purchase price. *Id.* at 514-15. The purchasers sued the seller for poor workmanship and failure to complete their home. *Id.* They sought cancellation of the note and release of the mortgage as reimbursement for the expenses they incurred in having someone else complete the home. *Id.* at 514. The seller counterclaimed for breach of the promissory note and foreclosure of the mortgage. *Id.* at 515. The district court granted judgments in favor of both parties. *Id.* The court set off the lesser amount due the purchasers for the expense of repairing the home against the greater amount due the seller on the promissory note. *Id.* There was no indication in *Hollon* that the parties had to plead setoff as a separate claim. *See also, Elk Ridge Lodge, Inc. v. Sonnett,* 2011 WY 106, ¶ 22, 254 P.3d 957, 963 (Wyo. 2011) (recognizing awards on parties' claim and counterclaim would offset).

[¶30] The second type of setoff involves a debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor. As explained by the United States Supreme Court in *Citizens Bank v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.E.2d 258 (1995), "[t]he right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" (quoting *Studley v. Boylston Nat. Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)). A court has inherent power to order this type of

equitable setoff as part of its enforcement of judgments. *Cargill,* 891 P.2d at 67. *See also, Deede v. Deede,* 2018 WY 92, ¶ 7, 423 P.3d 940, 942 (Wyo. 2018) ("[T]he 'decision about whether a credit against an outstanding judgment should be allowed is controlled by principles of equity.'" (quoting *Dorr v. Smith, Keller & Assocs.,* 2010 WY 120, ¶ 23, 238 P.3d 549, 554 (Wyo. 2010)) (other citations and quotation marks omitted). As 47 Am. Jur. 2d *Judgments* § 805 (2020) explains, "[w]hen mutual claims of the parties to an action have ripened into judgments, one judgment may be set off against the other. The right to set off one judgment against another is an incident of the general jurisdiction of the court over its suitors." When requesting an equitable setoff there is no requirement to separately plead it. 47 Am. Jur. 2d *Judgments* § 808 states: "A party who wishes to have one judgment setoff against another generally must apply to the court for such relief[.] . . . The request can be made by motion."

[¶31] Both definitions of setoff are met in this case. The parties made competing claims which were the grounds for the offsetting judgments – the Mantles asserted fraudulent transfer claims against Ray and Gary and the Members sued Mr. Mantle for breach of the MOU he personally guaranteed. These claims were properly pled and before the district court when it rendered its judgments. Additionally, Ray and Gary filed a motion for equitable setoff of the judgments the parties owed each other. At that point, their request for setoff was not based on an unresolved counterclaim but was based on the parties' debts to each other. No separate counterclaim was required or appropriate. Ray and Gary did not waive their claims for setoff by failing to plead a separate cause of action.

### C. Propriety of Setoffs

[¶32] The Mantles claim the district court erred by using the judgment against Mr. Mantle to offset their judgments against Ray and Gary. They assert the setoffs were improper for three reasons – partial assignments of judgments are not allowed; mutuality does not exist; and equity does not support them.

[¶33] "The decision to allow or compel a setoff rests within the sound discretion of the trial court." *Cargill,* 891 P.2d at 67. Consequently, we review the district court's decision for abuse of discretion. *Deede,* ¶ 7, 423 P.3d at 942 (citing *Dorr,* ¶ 24, 238 P.3d at 555; *Ultra Res. Inc. v. Hartman,* 2010 WY 36, ¶ 145, 226 P.3d 889, 934 (Wyo. 2010)). "'In determining whether the district court abused its discretion, we ask whether the district court reasonably could have concluded as it did.'" *Id.* (quoting *Welch v. Welch*, 2003 WY 168, ¶ 4, 81 P.3d 937, 938 (Wyo. 2003)). As always, we review questions of law de novo. *Kimzey,* ¶ 13, 461 P.3d at 1235; *Walker,* ¶ 44, 311 P.3d at 179; *Swaney,* ¶ 3, 256 P.3d at 515.

### 1. Partial Assignment

9

[¶34]  The Mantles contend partial assignments of judgments are not permitted.  In *Stilson v. Hodges,* 934 P.2d 736, 738 (Wyo. 1997), we held "a judgment creditor may assign his rights in the judgment to a third party." (citing 47 Am. Jur. 2d *Judgments* § 1011 (1995)).  Immediately following that quotation, we specifically addressed partial assignments:

> The assignment of a part of a debt transfers an equitable interest in that part of the debt to the assignee. 6 AM. JUR. 2D *Assignments* § 81 (1963). In order to prevent the debtor from paying the assignor, the assignee must give the debtor notice that the assignment has been made. *See id.* "The general rule is that if the debtor pays the assignor after notice of a partial assignment of the debt, [the debtor] may be held liable in equity by the assignee." *Id.* at 262. *See also Independent National Bank v. Westmoor Electric, Inc.,* 164 Ariz. 567, 571, 795 P.2d 210, 214 (Ct.App.1990); *Mid–States Sales Company, Inc. v. Mountain Empire Dairymen's Association, Inc.,* 741 P.2d 342, 347 (Colo.Ct.App.1987).

*Id.* at 738-39.  While the quote about partial assignments does not pertain specifically to judgments, *Stilson* indicates that partial assignments of judgments are allowed in Wyoming.  *See also, Gilroy v. Lowe,* 626 P.2d 469, 472-73 (Utah 1981) (approving, with some reservations, a partial assignment of judgment); *Madison and Pennings, Inc. v. Foundation Engineering Co.,* 390 S.W.2d 48, 50 (Tex. Civ. App. 1965) ("It is permissible to transfer only an interest in a judgment.").

[¶35]  The Mantles assert the emphasized part of Wyo. Stat. Ann. § 1-1-106 prohibits partial assignment of judgments:

> When cross demands exist between persons under circumstances that if one brought an action against the other, a counterclaim or setoff could be set up, *neither can be deprived of the benefit thereof by assignment by the other*, or by his death, but the two (2) demands will be deemed compensated so far as they equal each other.

(Emphasis added).  We fail to see how Hot Iron's and Three Way's partial assignments of their judgment against Mr. Mantle deprived the Mantles of the benefit of their judgments against Ray and Gary.  They still received value for their judgments by having the amount Mr. Mantle owed the Members reduced.

10

[¶36] The Mantles have not given us any reason to reject our decision in *Stilson*. The partial assignments of Three Way and Hot Iron's judgment against Mr. Mantle to Ray and Gary, respectively, were valid.

### *2. Mutuality*

[¶37] The Mantles assert mutuality is absent because Mr. and Mrs. Mantle are both judgment creditors of Ray and Gary, while Ray and Gary only have a judgment against Mr. Mantle. In other words, the Mantles claim a lack of mutuality because Mrs. Mantle is not a judgment debtor of Ray and Gary.[4]

[¶38] Typically, for a court to grant a setoff of judgments, the judgments must be mutual, meaning the same parties in the same capacities owe monetary judgments to each other. 47 Am. Jur. 2d *Judgments* § 805 (2020); *Spratt v. Security Bank of Buffalo,* 654 P.2d 130, 136 (Wyo. 1982) ("Debts to be used as set-offs must be due to and from the same persons in the same capacity." (citing *United States v. Clawson*, 13 F. Supp. 178 (D.C. Wyo. 1935)); *Mynatt v. Collis,* 57 P.3d 513, 534 (Kan. 2002) ("[S]etoff requires mutuality, meaning that the same parties owe a sum of money to each other."). Thus, generally, "a judgment . . . obtained against a single defendant . . . cannot be set off with a judgment obtained jointly by that defendant and another party, as this would be inequitable to the second party." 47 Am. Jur. 2d *Judgments* § 811 (2020). This rule was applied in *Brown v. Farkus,* 511 N.E.2d 1143 (Ill. Ct. App. 1986). Sanford and Gloria Brown were awarded a judgment against Allen and Eleanor Farkus for breach of an installment contract. *Id.* at 1144. Allen was awarded a judgment against Sanford for defamation. *Id.* The Illinois appellate court ruled it would be inequitable to Gloria to set off the judgments. *Id.* at 1148.

[¶39] While *Brown* applied the general rule, it is clear the equities of the situation were important in determining whether the setoff was appropriate when the judgments were not

---

[4] In their opening brief, the Mantles very briefly argue the judgments cannot be offset because there is a lack of mutuality between FNB (the assignor to the Mantles) and the Members. The Mantles cite two cases in support of this contention, *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.,* 755 F.2d 1453 (11th Cir. 1985), and *Spratt v. Security Bank of Buffalo,* 654 P.2d 130, 136 (Wyo. 1982). *Republic Health Corp.* does not address assignments, mutuality, or setoffs, and the Mantles do not explain how it supports their position. They cite *Spratt* only for the general proposition that for debts to set off, the obligations must be mutual. *Spratt* does not address the question of how mutuality is determined when debts are assigned. The Mantles provide additional authority for their assertion in their reply brief. However, reply briefs are "limited to such new issues and arguments" raised in the appellees' brief. Wyoming Rule of Appellate Procedure (W.R.A.P.) 7.03. The Mantles are not responding to a new argument but ostensibly providing additional authority for the poorly supported argument in their opening brief. Furthermore, the additional authority addresses only the general law of subrogation; it does not speak specifically to assignments of judgments. Given the lack of cogent argument or citation to pertinent authority, we will not further consider this matter. *See, e.g.*, *Gowdy v. Cook,* 2020 WY 3, ¶ 31, 455 P.3d 1201, 1209 (Wyo. 2020) (refusing to address contentions not supported by cogent argument or citation to pertinent authority) (citing *Wright v. State,* 2019 WY 49, ¶¶ 8-9, 440 P.3d 1092, 1094 (Wyo. 2019); *Hodson v. Sturgeon,* 2017 WY 150, ¶¶ 6-8, 406 P.3d 1264, 1265-66 (Wyo. 2017)).

mutual. 20 Am. Jur. 2d *Counterclaim, Recoupment, Etc.* § 52 (2020) recognizes the equitable exception to the mutuality requirement: "Courts do have equitable authority . . . to recognize cross-claims between litigants lacking mutuality and to set off one against the other whenever it becomes necessary for a clear equity or to prevent irremediable injustice." *See also, In re Davidson Lumber Sales, Inc.,* 66 F.3d 1560, 1564 (10th Cir. 1995) ("[A] court in equity may permit setoff even when the debts are not mutual in order to effect equity and prevent injustice."); *Lewis v. United Joint Venture,* 691 F.3d 835, 840 (6th Cir. 2012) (A court will not set off "an individual debt from a joint debt absent some special justification."); *Cohn v. Krauss,* 67 N.E.2d 62, 68 (Ohio Ct. App. 1943) ("The general rule . . . is that separate debts cannot be set off against joint debts unless there is some special equity or equities to justify it." (citation omitted)). We will, therefore, determine whether equitable principles support setoff under the circumstances of this case.[5]

### 3. Equities

[¶40]   The district court concluded the equities supported a setoff. The Mantles claim that conclusion was erroneous and cite a litany of harms they claim to have suffered at the hands of the Defendants. Their assertions of unfair treatment are largely based upon their unsuccessful arguments to the district court at trial and to this Court on appeal in *Mantle I.* For example, the Mantles lump together all the defendants named in the case[6] and assert their hands are unclean because they engaged in several fraudulent transfers. The Mantles point to payments to Hot Iron for the City of Sheridan project (*Mantle I,* ¶¶ 95-97, 437 P.3d at 791-92), the sale of the Gillette property to GTI (*Mantle I,* ¶¶ 92-94, 437 P.3d 790-91), and the transfer of 16 pickups to WyoDak (*Mantle I,* ¶¶ 110-116, 437 P.3d at 794-96) as examples of the Defendants' improper actions. The district court rejected those claims, and we affirmed in *Mantle I. Id.* Their unsuccessful claims do not warrant disallowing the setoffs. For the same reason, the Mantles' argument that the equities favor them because WyoDak is essentially an alter-ego of North Star is unavailing; they lost that argument in *Mantle I. Mantle I,* ¶¶ 133-39, 437 P.3d at 800-01.

[¶41]   The Mantles also claim the Garlands did not detrimentally rely on the MOU because they continued to receive their salaries. This claim is factually incorrect. It was conclusively established in *Mantle I* that, at Mr. Mantle's and Mr. Killmer's urging, the

---

[5] Setoff would also be appropriate under the law of contracts. "When a contract is payable to two more parties jointly, payment may be made to either of them." *Barnard v. Wendling,* 627 P.2d 603, 606 (Wyo. 1981). The Restatement (Second) of Contracts § 299 (1981, updated 2020) states the concept as "any joint obligee, unless limited by agreement, has power to discharge the promisor by receipt of a promised performance . . ., and tender to one joint obligee is equivalent to tender to all." Here, Ray and Gary tendered to Mr. Mantle the value of the Mantles' judgments against them by discharging the equivalent value of their judgment against him. Contract law, then, does not find any inherent inequity in satisfaction of an obligation to joint obligees through payment to one of them. The same principle logically applies here.

[6] The Mantles' arguments regarding other defendants are of questionable importance to balancing the equities between the Mantles and Ray and Gary.

12

Garlands continued to receive their salaries, not as employment income, but as interest on the North Star purchase price in lieu of an immediate down payment. *Mantle I,* ¶¶ 14, 66, 437 P.3d at 770, 783. The Mantles also claim the Defendants benefitted from the FNB loan, but improperly refused to pay it. We do not perceive that circumstance weighs any heavier against the Defendants than Mr. Mantle's failure to comply with the MOU weighs against him.

[¶42] The Mantles point to our ruling in *Mantle I,* ¶¶ 117-21, 437 P.3d at 797-98, that the Garlands were not entitled to assert their equitable defenses because they came to the court with unclean hands as indicating the district court should not have allowed an equitable setoff. Our ruling in *Mantle I* looked only at the conduct of the Garlands to determine if they were entitled to assert equitable defenses. *Id.* By contrast, the task of the district court with regard to Ray's and Gary's claims for equitable setoff was to *balance* the equities of the parties.

[¶43] While Ray's and Gary's hands were unclean because they engaged in some transfers to the detriment of North Star's creditors, Mr. Mantle's hands were also unclean. His improper actions were detailed in *Mantle I,* ¶¶ 76, 78, 437 P.3d at 785-86. There, we said the record supported the district court's findings that Mr. Mantle made affirmative misrepresentations to the Garlands regarding North Star's finances. *Id.,* ¶ 78, 437 P.3d at 786. He knowingly engaged in activities, including signing the FNB loan documents, in violation of the covenants in a loan North Star had with American National Bank. *Id.*, ¶ 76, 437 P.3d at 785. We also noted in *Mantle I,* ¶ 120, 437 P.3d at 797-98, "Mr. Mantle certainly played a role in creating the circumstances that led to the (fraudulent) conveyances."

[¶44] As to Mrs. Mantle's involvement in this case, she was a joint owner of the securities used as collateral for the FNB loan and she personally guaranteed the loan. *Mantle I,* ¶ 15, 437 P.3d at 771. Later, she participated in the purchase of the FNB note and this litigation. *Id.,* ¶ 40, 437 P.3d at 777. It is clear she put her personal financial resources at risk in support of Mr. Mantle's business goals. Given she voluntarily entered the fray, the setoff is not inequitable to her. Under the circumstances of this case, we have no difficulty concluding the district court did not abuse its discretion in using the judgment against Mr. Mantle to offset the judgments the Mantles held against Ray and Gary.

### D. Combined Motion for Protective Order and Motion for Setoff

[¶45] Ray's "Motion for Protective Order with Respect to Discovery in Aid of Execution, Together with Motion to Allow Setoff and Declare Judgment Satisfied" was brought in part under W.R.C.P. 26(c). Gary joined in the setoff portion of Ray's motion. The Mantles claim it was improper for Ray and Gary to file a motion for setoff under W.R.C.P. 26(c), and they violated the requirement to confer before filing their motion for a setoff.

13

[¶46] Rule 26(c) states in pertinent part:

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. *The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.* The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;
. . .
(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

(Emphasis added).

[¶47] The district court recognized Ray's filing included two motions in a single document – a motion under Rule 26(c) for an order of protection from the Mantles' discovery requests in aid of execution on their fraudulent transfer judgment against him and a motion for an order declaring the judgment satisfied through setoff. Because both motions addressed the Mantles' efforts to execute on their judgment against Ray and the need for a protective order depended upon the resolution of the setoff issue, Ray understandably filed them together. The Mantles point to no authority indicating it is improper to combine more than one motion in a single filing. To the contrary, we have considered combined motions in other civil cases. *See, e.g., Mitchell v. Preston,* 2019 WY 41, ¶¶ 1 n.1, 13, 439 P.3d 718, 719 n.1, 721 (Wyo. 2019) (combined motion to establish tribal jurisdiction and motion for change of venue); *Elworthy v. First Tennessee Bank,* 2017 WY 33, ¶ 17, 391 P.3d 1113, 1118 (Wyo. 2017) (combined motion to dismiss and motion for judgment on the pleadings); *Jensen v. Fremont Motors Cody, Inc.,* 2002 WY 173, ¶ 1, 58 P.3d 322, 324 (Wyo. 2002) (combined motion for judgment as a matter of law and motion for a new trial).

[¶48] The motion for setoff was not a discovery dispute governed by Rule 26(c); therefore, Ray and Gary had no duty to confer prior to filing it. While Ray may have had a duty to confer prior to filing the motion for protective order, the Mantles do not specifically challenge the district court's grant of the protective order. As the district court correctly stated, "the motion for setoff and the motion for protective order were joined in a single

14

pleading[;] it [would be] nonsensical to deny [the motion for setoff] because [Ray] did not confer before filing the motion for a protective order."

### E. Exemption

[¶49] The Mantles claim a writ of execution/garnishment or some "other form of attachment" on their judgments against Ray and Gary is a prerequisite to application of the setoffs. They argue a separate collection action would give them the opportunity to demonstrate the judgments are exempt from execution because they hold them as tenants by the entirety.

[¶50] After Hot Iron and Three Way assigned part of their judgment against Mr. Mantle to Ray and Gary, the Mantles presented two documents they claimed accomplished an assignment of the fraudulent transfer judgments to themselves as husband and wife. The first was a "Declaration and Agreement as to Title and Interests." The Mantles listed the loan documents they obtained by assignment from FNB and declared they acquired their rights as husband and wife, tenants by the entirety. In the same document, the Mantles transferred their interest in the loan documents to themselves as husband and wife. The Declaration did not mention their judgments against North Star, Gary or Ray. To remedy that omission, on May 23, 2018, the Mantles assigned the judgments to themselves as husband and wife, tenants by the entirety.

[¶51] The Mantles offer no authority to support their claims that an additional step in collection of a judgment is necessary to accomplish a setoff or that they should be allowed to assert that their judgments were exempt from execution in a separate proceeding. Given the lack of cogent argument or citation to pertinent authority, we will not further consider this matter. *Gowdy,* ¶ 31, 455 P.3d at 1209; *Wright,* ¶¶ 8-9, 440 P.3d at 1094; *Hodson,* ¶¶ 6-8, 406 P.3d at 1265-66. Furthermore, their assignment of the judgments to themselves as tenants in the entirety was improper under § 1-1-106 because it would deprive Ray and Gary, holders of a cross demand, of the benefit of their claim by making the judgments held by the Mantles' exempt from execution. As we stated above, § 1-1-106 prohibits assignments which would deprive a person of the benefit of his claim.

### II. Killmer Settlement Funds

[¶52] To provide context for our discussion of the Killmer Settlement Funds, we will provide some additional factual background. After North Star and the Members settled with Mr. Killmer and, subsequently, with his malpractice carrier, they moved to dismiss their third-party complaint against Mr. Killmer and for approval of their plan to distribute the settlement proceeds. North Star and the Members acknowledged there were various attorney liens against the proceeds and asserted North Star did not have sufficient funds to pay its attorney and accounting fees. However, they recognized that "counsel, experts, and accountants [had] rendered services for North Star" so they proposed splitting "the funds

15

in equal shares." North Star's and the Members' plan for distribution of the settlement funds was presented to the court under seal.

[¶53] The Mantles objected to the motion to approve the settlement distribution, claiming there was no justiciable controversy. They maintained the proposal to distribute the funds appeared to be some sort of "informal declaratory judgment action" which had not been properly brought. The Mantles claimed the "relief requested would appear to be better presented as part of a receivership proceeding or something similar." The district court dismissed Mr. Killmer from the case, but ruled it had "no jurisdiction over any other relief requested in [the] motion."

[¶54] The parties subsequently stipulated to having $121,271 of the Killmer Settlement Funds "on behalf of North Star" deposited with the clerk of court. The district court approved the deposit, required North Star's creditors be notified, and ordered the funds to remain on deposit until after the trial.[7]

[¶55] The case proceeded to a bench trial; however, no cause of action pertaining to the Killmer Settlement Funds was tried. When the Mantles attempted to question Ray about the allocation of the settlement funds, the Defendants objected. The Mantles withdrew the question, and the district court did not rule on the admissibility of the evidence. In a confusing question, the Mantles asked Gary how he intended "to allocate the settlement payment that Hot Iron received from [Mr.] Killmer's insurance company between [Mr. Mantle and Mr. Killmer.]" Gary could not answer the question. The "Order After Bench Trial" did not address the settlement funds.

[¶56] After the trial, the Mantles filed a "Motion for Further Findings of Fact and to Alter or Amend 'Order After Bench Trial.'" They requested the district court "make further findings as to the application of the settlement funds received by [North Star and the Members] from [Mr.] Killmer and grant a remittitur or otherwise alter or amend the judgment in order to reduce it by the amount of the settlement[.]" The district court denied their motion.

[¶57] While *Mantle I* was pending, the Mantles requested the district court order "that those proceeds arising from the settlement of the claims against [Mr.] Killmer that have

---

[7] The record on appeal contains several orders purportedly addressing the Killmer Settlement Funds, but the attendant motions which would provide context for the orders are not included as part of the record. The "Order Granting Stipulated Motion to Deposit Funds" with the clerk of court is one such order as the record does not include the stipulated motion. The Mantles also direct us to an "Order Denying Interpleader and Order to Hold Funds." In that order, the district court denied Debra R. Vandel's motion seeking "an Order of Interpleader authorizing the deposit of funds into the Registry of the Court for the purpose of resolution of issues of payment to various creditors." The record does not show how Ms. Vandel is connected to this case or what funds she sought to deposit.

not yet been paid over to the Clerk of this Court be turned over for distribution to North Star's creditors." They contended the Members' claims against Mr. Killmer were derivative of North Star's claims, the Members did not have standing to assert direct claims against Mr. Killmer, and the Killmer Settlement Funds should be payable only to North Star's creditors. *Mantle II,* ¶ 20, 441 P.3d at 847. The Members responded that their claims were not derivative as they had been individually harmed by his actions. They also argued that, given the Mantles were not parties to the suit against Mr. Killmer or the settlement, the Mantles could not assert any right to the settlement proceeds. In response, the Mantles stated they had standing to assert a claim against the Killmer Settlement Funds.

[¶58] The district court ruled it did not have enough facts before it to decide the motion and "[f]urther litigation may be needed to resolve this dispute." *Mantle II,* ¶ 21, 441 P.3d at 847. The district court distributed the $121,271 of the Killmer Settlement Funds on deposit with the clerk of court to North Star's creditors on a first come, first serve basis. *Mantle II,* ¶¶ 29-32, 441 P.3d 849-50. In *Mantle II,* we declined to consider any issues regarding the Killmer Settlement Funds which were not on deposit with the court because there was no final ruling by the district court regarding those funds and remanded for further proceedings. *Id.,* ¶¶ 23-24, 441 P.3d at 847-48. We affirmed the district court's distribution of the funds on deposit. *Id.*, ¶¶ 29-32, 441 P.3d at 849-50.

[¶59] On remand, the district court made the following observations and rulings regarding the Mantles' claim to the remainder of the Killmer Settlement Funds:

> 14. [The Mantles] chose not to pursue any claims against Mr. Killmer, and the Defendants dismissed Mr. Killmer from the action after the negotiated settlement. [The Mantles] never amended their pleadings to challenge the Killmer Settlement as a fraudulent transaction. As such, issues relating to the Killmer Settlement [F]unds were simply not litigated at the trial. Most of the information the [c]ourt has about the settlement is in the form of unsworn representations made by counsel in their various pleadings.
>
> 15. Further, the Killmer Settlement agreement is a contract between the Defendants and a third party. The terms of that contract were not litigated at trial, nor were the Defendants given an opportunity at trial to contest [the Mantles'] standing to challenge a contract to which they were not parties.
>
> 16. Because the disposition of the Killmer Settlement [F]unds was not litigated at the trial, the Court could not make additional findings on that issue as requested in the post-trial motions, and it cannot do so now without further litigation.

17

> Thus, it appears that this issue is not properly before the [c]ourt at this time.

[¶60]   We have more information regarding the Killmer Settlement Funds in this appeal than we did in *Mantle II*.  The Mantles are seeking to collect their judgment against North Star by making a claim against the remainder of the settlement funds as a North Star asset.  We read Paragraph 16 of the district court's order as concluding there was no subject matter jurisdiction over the remainder of the Killmer Settlement Funds.  "Jurisdiction is a question of law reviewed *de novo*."  *Williams v. Sundstrom,* 2016 WY 122, ¶ 10, 385 P.3d 789, 792 (Wyo. 2016) (citing *Golden v. Guion,* 2016 WY 54, ¶ 11, 375 P.3d 719, 722 (Wyo. 2016)).

[¶61]   We agree the district court did not have subject matter jurisdiction over the portion of the Killmer Settlement Funds which was not deposited with the clerk of court.  No party asserted a cause of action regarding those funds.  For example, the Mantles did not allege North Star or the Garlands had fraudulently transferred those funds to the Members, making them unavailable for collection by North Star's creditors.  The lack of a claim for fraudulent transfer of the settlement funds stands in contrast to the Mantles' fraudulent transfer claims against the Garlands.  *See Mantle I,* ¶¶ 86-116, 437 P.3d at 788-96.

[¶62]   The district court properly addressed its authority over the Killmer Settlement Funds early in this case when it denied North Star and the Members' motion to approve the distribution of the settlement funds.  At the Mantles' urging, the district court ruled it did not have jurisdiction over the funds at that time.  Regarding the funds which were not deposited with the district court, that circumstance remained true.  There was simply no claim regarding those funds before the district court.  The $121,271, by contrast, was under the district court's jurisdiction as a result of the stipulated order depositing the funds with the clerk of court.

## CONCLUSION

[¶63]   We affirm the district court in all respects.  Ray and Gary were entitled to use the assigned portions of the judgment against Mr. Mantle to satisfy the judgments the Mantles had against them for fraudulent transfers.  The district court did not have jurisdiction over the portion of the Killmer Settlement Funds not deposited with the district court.