# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 73

APRIL TERM, A.D. 2024

July 11, 2024

DONALD FUGER and MARY
FUGER,

Appellants
(Defendants),

v.

S-23-0270

LARRY WAGONER,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
The Honorable Richard L. Lavery, Judge

*Representing Appellants:*
Clark Stith, Rock Springs, Wyoming.  No argument presented.

*Representing Appellee:*
Elizabeth Greenwood and Inga L. Parsons, Greenwood Law, LLC, Pinedale,
Wyoming.  Argument by Ms. Greenwood.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.
Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne,
Wyoming 82002, of typographical or other formal errors so correction may be made before final
publication in the permanent volume.

**JAROSH, Justice.**

[¶1]     This is the second appeal stemming from a dispute between Donald Fuger and Larry Wagoner related to Mr. Wagoner's construction and possession of two buildings on land Mr. Fuger and his wife owned.  In the first appeal, *Fuger v. Wagoner*, 2020 WY 154, ¶¶ 6, 22, 478 P.3d 176, 180, 183 (Wyo. 2020) (*Fuger I*), this Court reversed the district court's finding after a bench trial that Mr. Wagoner was entitled to damages for Mr. Fuger's breach of an oral contract to transfer ownership of one of the buildings and a portion of the Fugers' land to him.  We concluded the purported oral contract was void because Mrs. Fuger, as a tenant by the entirety, did not join in the agreement, and remanded the case to the district court to decide Mr. Wagoner's equitable claims against the Fugers.  *Id.,* ¶¶ 12-14, 478 P.3d at 182.  On remand, the district court found for Mr. Wagoner on his claim that the Fugers were unjustly enriched by his construction of the buildings but offset some of his damages due to his use of the buildings for several years.  The district court also awarded Mr. Wagoner prejudgment interest on a portion of his damages.  The Fugers appeal one of the district court's measures for offsetting Mr. Wagoner's damages and the award of prejudgment interest.  We affirm.

## ISSUES

[¶2]     We restate and reorder the Fugers' issues as follows:

1. Did the district court err by offsetting Mr. Wagoner's unjust enrichment damages by the amount of rent he actually received on the second building rather than its fair rental value?

2. Did the district court err by awarding Mr. Wagoner prejudgment interest?

## FACTS AND PROCEDURAL BACKGROUND

### A.     Facts

[¶3]     The relevant facts are not in dispute.  Donald and Mary Fuger own forty acres of land in Reliance, Wyoming, as tenants by the entireties.  Around 2008, Larry Wagoner began using the Western States Yard, a five-acre section of the Fugers' land, to operate his oilfield business.  Mr. Fuger and Mr. Wagoner had agreed to construct two buildings on the site, with Mr. Wagoner in charge of the construction and Mr. Fuger responsible for obtaining financing.  They did not memorialize their agreement in writing.  In 2012, the Fugers obtained the necessary financing for the project from RSNB Bank through their limited liability company, Reliance Storage.  The financing was in the form of a construction loan and, later, permanent financing.

1

[¶4]    Prior to beginning construction, Mr. Fuger and Mr. Wagoner signed a lease agreement giving Mr. Wagoner exclusive use of both buildings for five years.  In the trial preceding *Fuger I*, Mr. Wagoner claimed he and Mr. Fuger also orally agreed Mr. Wagoner would receive ownership of one of the buildings and the Western States Yard in exchange for his construction work and making payments on the construction loan while he used the buildings (ostensibly in the form of rent).  The Fugers denied there was an oral contract with Mr. Wagoner.  Instead, they claimed the sole consideration for Mr. Wagoner's construction work on the buildings and payment of the loan was their agreement to lease the buildings to him for five years.

[¶5]    Before erecting the two buildings, Mr. Wagoner prepared a portion of the Western States Yard for the construction.  He performed some of the work himself, using his own equipment.  For other tasks, he rented equipment and supervised the labor.  Mr. Wagoner did not charge the Fugers for the site preparation work or keep any contemporaneous time records, believing he was doing the work in exchange for his eventual ownership of one of the buildings and the Western States Yard.

[¶6]    Mr. Wagoner and Mr. Fuger worked with an attorney to obtain the necessary building permits.  Mr. Wagoner then served as general contractor or project manager for construction of the buildings.  He also performed some of the construction labor himself and, on occasion, allowed the subcontractors to use his equipment.  A third party, Cleary Building Company (Cleary), constructed the building exteriors and installed the garage doors under Mr. Wagoner's supervision.  Other contractors, Mr. Wagoner, and Mr. Wagoner's family and friends performed the construction work on the interior of the buildings.  While some of the project work was billed to Mr. Wagoner and then paid from construction loan proceeds, Mr. Wagoner never charged the Fugers for any of the labor he or his friends and family performed or for the construction management services he provided.  He also did not keep contemporaneous records, again believing he would soon own one of the buildings and the Western States Yard.  Based upon the evidence presented at the second bench trial, the district court determined the value of Mr. Wagoner's self-performed labor to construct the buildings was $96,600, and the value of his construction management services was $77,120.[1]  The value of various other expenses Mr. Wagoner incurred, including supplies, other unreimbursed costs, and a portion of the cost of a permanent electrical line called a Ready Line, was undisputed.

[¶7]    Construction of the two buildings was substantially complete by early 2013.  Mr. Wagoner occupied the first building and paid the Fugers $2,500/month rent for all of 2013 and the first eleven months of 2014.  Thereafter, and until June 2018, Mr. Wagoner made

---

[1] The district court found the total construction cost, not including a construction management fee, was $385,600, which included the cost of the construction loan, the value of Mr. Wagoner's self-performed labor, and the cost of materials.  Relying upon Mr. Wagoner's expert's testimony, the district court determined 20 percent of the total construction cost was an appropriate fee for Mr. Wagoner's construction management.

2

monthly payments of approximately $2,041 to RSNB Bank to service the loan. The parties agree Mr. Wagoner's payments to the Fugers (and then to RSNB Bank) totaled $160,205.19.

[¶8] Mr. Wagoner rented the second building to Randy Pitt for approximately 18 months, beginning in January 2013. Mr. Wagoner received $2,500/month in rent from Mr. Pitt for three of those months, but not for the other fifteen months. However, Mr. Pitt performed work on the Fugers' property during that time, including building a containment area/pit and assisting Mr. Wagoner with installing electricity. He also paid the remainder of the cost of and installed the Ready Line. After Mr. Pitt vacated the second building sometime in 2014, Mr. Wagoner did not rent it out again until 2016, when Excel Driver Services (Excel) leased it at the rate of $2,500/month. Excel paid rent to Mr. Wagoner for 18 months; after that, it paid Mr. Fuger. The parties agree the total rent Mr. Wagoner received from Mr. Pitt and Excel was $52,500.

[¶9] Mr. Wagoner was responsible for maintaining both buildings for approximately five years, although at trial he could not provide a complete description of the work he did or the hours he dedicated to each project. Instead, he testified he generally performed maintenance work outside and inside the buildings, including, for example, repairing a furnace and frozen pipes. According to Mr. Wagoner, he "probably" spent around 100 hours doing maintenance and repair work over the course of five years. He testified he would normally charge a third party $100-$120/hour for that type of work.

## B.    Procedural Background

[¶10] By late 2017, the once harmonious relationship between Mr. Wagoner and Mr. Fuger had disintegrated and, on November 17, 2017, the Fugers issued a Notice to Quit Premises to Mr. Wagoner. Mr. Wagoner responded by filing a Complaint against the Fugers, which included claims for breach of the oral contract to give him title to one building and the Western States Yard, promissory estoppel, unjust enrichment, and quantum meruit. He also sought an injunction allowing him to continue to possess and use the two buildings. The Fugers filed a separate action against Mr. Wagoner claiming the only agreement between Mr. Wagoner and Mr. Fuger was the lease (i.e., there was no enforceable oral contract to transfer ownership of any property), slander of title, and forcible entry and detainer. The district court consolidated the two cases.

[¶11] On December 14, 2018, the district court held a one-day bench trial. In its subsequent Findings of Fact and Conclusions of Law, the district court determined Mr. Fuger and Mr. Wagoner had a valid oral contract whereby Mr. Wagoner was to receive one of the buildings and the Western States Yard in exchange for his construction of the buildings and his payment of rent and to service the loan. However, the district court also concluded Mrs. Fuger's tenancy by the entireties made specific performance (conveyance of the land to Mr. Wagoner) impossible. The district court then awarded Mr. Wagoner

3

$302,234.48 in contract damages, plus post-judgment interest. The district court did not reach Mr. Wagoner's claims for promissory estoppel, unjust enrichment, and quantum meruit because it found an enforceable oral contract. The district court also gave the Wagoners thirty days to vacate the premises. Both parties appealed the district court's decision.

[¶12] This Court subsequently ruled in *Fuger I* that the oral contract between Mr. Fuger and Mr. Wagoner was void because Mr. Fuger could not unilaterally sell property he owned with Mrs. Fuger as tenants by the entireties, and the district court erred by awarding damages for breach of the void contract. *Fuger I*, ¶¶ 14, 22, 478 P.3d at 182, 183. As a result, we reversed and remanded the case for consideration of Mr. Wagoner's equitable claims against the Fugers. *Id.*

[¶13] On remand, the district court held a second bench trial. At the outset, and to avoid duplicating evidence, the parties stipulated that for the purposes of the second trial the district court could consider as evidence the trial transcript and exhibits from the first trial. The district court also heard additional testimony and received new exhibits. After trial the district court issued its Findings of Fact[,] Conclusions of Law, and Judgment (Judgment). The district court held for Mr. Wagoner on his claim that the Fugers were unjustly enriched by his labor and supervisory work for the construction of the site and buildings, his payments to third parties for materials, services, costs, and fees to improve the property (including the Ready Line), and his payments of rent and to service the loan. The district court found his total damages before any reductions were $395,108.19, consisting of the following:

| | |
|---|---|
| Unpaid labor by Mr. Wagoner | $96,600.00 |
| Unpaid project management fee | $77,120.00 |
| Material expenses paid by Mr. Wagoner | $42,000.00 |
| Ready Line, other costs and fees | $19,183.00 |
| Rent/loan payments by Mr. Wagoner | $160,205.19 |
| **TOTAL DAMAGES:** | **$395,108.19** |

The district court did not award damages for Mr. Wagoner's estimated 100 hours of maintenance or repair work because the evidence he presented on the value of his work was speculative and conjectural.

[¶14] The district court also held that as a court sitting in equity it had the general power to "offset" (i.e., reduce) Mr. Wagoner's damages, including by the value he received from his occupancy and use of the two buildings. After the first trial, the district court ruled the fair rental value of each building was $2,500/month. As a result, the parties agreed the fair

4

rental value for the approximately 79.6 months Mr. Wagoner occupied the first building was $199,032.25, a figure the district court used to offset Mr. Wagoner's damages. Put another way, the district court offset Mr. Wagoner's damages by the total amount Mr. Wagoner would have had to pay to rent a comparable building. For the second building, the district court only offset Mr. Wagoner's damages by the actual rent he received from Mr. Pitt and Excel while the building was rented ($52,500), rather than the fair rental value for every month he controlled it ($162,500). Finally, the parties stipulated to two additional offsets, one for the purchase of a furnace and the other representing money Mr. Wagoner previously collected from the Fugers.

[¶15] All total, the district court found Mr. Wagoner's damages should be offset by $265,394.25, consisting of the following:

| | |
|---|---:|
| Fair rental value of the building Mr. Wagoner occupied | $199,032.25 |
| Rent Mr. Wagoner received on the second building | $52,500.00 |
| Reimbursement of the expense for a furnace | $10,000.00 |
| Execution on the Fugers' assets related to lien | $3,862.00 |
| **TOTAL OFFSETS:** | **$265,394.25** |

After subtracting the offset amount from Mr. Wagoner's total damages, the district court held his net damages were $129,713.94.

[¶16] The district court then considered Mr. Wagoner's unopposed request for prejudgment interest, concluding approximately 56 percent ($221,388.19) of Mr. Wagoner's damages—all but the damages for his unpaid labor and the unpaid management fee—constituted liquidated damages subject to prejudgment interest. Finding prejudgment interest should only be computed after accounting for the offset, and that it was appropriate to reduce the amount of liquidated damages by a proportionate amount of the offset (approximately 56 percent), the district court awarded prejudgment interest on only $72,639.80 of Mr. Wagoner's net damages. The district court concluded prejudgment interest accrued at the statutory rate of seven percent from the date of the last payment Mr. Wagoner made on behalf of the Fugers (a June 1, 2018, payment to RSNB Bank) to three days before judgment (July 28, 2023), for a total prejudgment interest award of $26,230.19.

### STANDARDS OF REVIEW

[¶17] "After a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo." *Fuger I*, ¶ 8, 478 P.3d at 181 (citations omitted). However, since unjust enrichment (or quantum meruit) is an equitable remedy, "the trial

5

court ha[s] considerable discretion in ruling on the claim. We will not interfere with the lower court's decision unless an abuse of discretion is demonstrated." *Elec. Wholesale Supply Co., Inc. v. Fraser*, 2015 WY 105, ¶ 29, 356 P.3d 254, 261-62 (Wyo. 2015) (citing *Windsor Energy Grp., LLC v. Noble Energy, Inc.,* 2014 WY 96, ¶ 23, 330 P.3d 285, 291-92 (Wyo. 2014) (discussing the standard of review after a bench trial on the equitable theory of laches)).

[¶18] "'In determining whether the district court abused its discretion, we ask whether the district court reasonably could have concluded as it did.'" *Deede v. Deede*, 2018 WY 92, ¶ 7, 423 P.3d 940, 942 (Wyo. 2018) (quoting *Welch v. Welch*, 2003 WY 168, ¶ 4, 81 P.3d 937, 938 (Wyo. 2003)). "To determine whether the district court's decision was reasonable, '[w]e consider the evidence in the light most favorable to the district court's decision, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.'" *Evans v. Sharpe*, 2023 WY 55, ¶ 26, 530 P.3d 298, 307 (Wyo. 2023) (quoting *Bishop v. Bishop*, 2017 WY 130, ¶ 9, 404 P.3d 1170, 1173 (Wyo. 2017) (internal quotation and other citation omitted)). "'The appellant bears the burden of showing an abuse of discretion.'" *Dutka v. Dutka,* 2023 WY 64, ¶ 11, 531 P.3d 310, 314 (Wyo. 2023) (quoting *Matter of GAC*, 2017 WY 65, ¶ 32, 396 P.3d 411, 419 (Wyo. 2017)) (other citations omitted).

[¶19] Whether a district court is entitled to award prejudgment interest in a case is a question of law reviewed *de novo*; whether prejudgment interest should be awarded is reviewed for an abuse of discretion. *Hanft v. City of Laramie*, 2021 WY 52, ¶ 87, 485 P.3d 369, 392 (Wyo. 2021) (citing *Halling v. Yovanovich*, 2017 WY 28, ¶ 30, 391 P.3d 611, 621 (Wyo. 2017), and *KM Upstream, LLC v. Elkhorn Constr., Inc.*, 2012 WY 79, ¶ 44, 278 P.3d 711, 727 (Wyo. 2012)).

### DISCUSSION

### I. *Offset of Damages based upon Rent Received Rather than Rental Value.*

[¶20] Offset, sometimes called set-off, is an equitable principle. As we recently explained, one type of offset "involves a debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." *Mantle v. North Star Energy & Constr., LLC*, 2020 WY 125, ¶ 30, 473 P.3d 279, 287 (Wyo. 2020) (citing *Citizens Bank v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.E.2d 258 (1995) ("The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" (internal quotation and citation omitted))). "Possessing equitable jurisdiction, the district court has the inherent power to allow or compel an equitable set-off." *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57, 67 (Wyo. 1995). Because offset is equitable, the decision to offset damages is reviewed for abuse of discretion. *Mantle*, ¶ 33, 473 P.3d at 287-88. While a plaintiff carries the burden of proof as to damages, a defendant has the burden of proof as

6

to offset. *See, e.g., Deede*, ¶ 11, 423 P.3d at 944 (defendant "does not otherwise elaborate or explain . . . how he met his burden to establish he was entitled to a set-off"); *see generally Legacy Builders, LLC v. Andrews*, 2014 WY 103, ¶ 27, 335 P.3d 1063, 1070 (Wyo. 2014) (the party who commits a wrong has the burden of proof as to the reduction of damages).

[¶21] The Fugers do not challenge the district court's equitable finding of unjust enrichment nor do they contend the district court erred in calculating total damages before offset. Instead, the Fugers assert the district court erred as a matter of law when it used an improper measure of offset for the building Mr. Wagoner rented to others. Specifically, they allege the district court wrongly concluded the ***rent actually received*** by Mr. Wagoner from Mr. Pitt and Excel ($52,500) was the appropriate measure for offsetting their unjust enrichment. They assert that instead the district court should have offset Mr. Wagoner's damages by the amount Mr. Wagoner ***could have received*** in rent had he rented the second building at the fair rental value of $2,500/month for the entire 65 months he possessed it ($162,500).

[¶22] In support of their argument, the Fugers assert this Court has previously held fair rental value is the appropriate measure for calculating damages for the loss of use of property in the context of breach of contract cases, citing *United States ex rel. Farmers Home Admin. v. Redland*, 695 P.2d 1031, 1038 (Wyo. 1985). They allege we have also applied the same general principle in unjust enrichment cases, including most recently *Cross v. Berg Lumber Co.*, 7 P.3d 922, 932-37 (Wyo. 2000) (fair rental value of equipment).

[¶23] The Fugers are correct that the proper measure of compensatory damages for loss of use of property in tort or contract cases is generally fair or reasonable rental value. *Frost v. Eggeman*, 638 P.2d 141, 145 (Wyo. 1981); *see, e.g., Redland*, 695 P.2d at 1038. However, this is not a case involving breach of contract or a legal remedy—it is a case where the district court sat in equity with the ability to exercise considerable discretion. In addition, and while this Court has approved the use of fair rental value as a measure of unjust enrichment damages in the past, we have never required it or established it as the general rule. Rather, a district court's decision to do so is discretionary, as demonstrated in *Cross*.

[¶24] In *Cross*, we considered whether a district court properly required Richard Cross, who wrongfully converted and used Berg Lumber Company's (Berg) road grader for 27 months, to pay Berg $67,500 in restitution for loss of use of the grader, based upon a fair rental value of $2,500/month. *Cross*, 7 P.3d at 930, 932-33. As we explained, the award represented "restitution requiring the tortfeasor to disgorge the amount by which he was unjustly enriched by his wrongdoing." *Id*. at 932. On review, we noted Mr. Cross's "willfully deceptive misconduct" and considered five factors to assist in measuring restitution, only one of which was market or rental value. *Id*. at 936. Ultimately, and under the circumstances of that case, we agreed what Mr. Cross saved by not having to rent a

7

road grader, i.e., the fair rental value of the grader, was an appropriate measure of damages for his wrongdoing and affirmed the award. *Id.*

[¶25]  The circumstances of the present case, as well as the equities, are far different. Here, the Fugers are the parties who were unjustly enriched at the expense of Mr. Wagoner. Unlike Mr. Cross, Mr. Wagoner did nothing wrong. Moreover, the issue the Fugers challenge is not the measure of unjust enrichment (the initial equitable determination) but the measure of offset against unjust enrichment (its own separate equitable determination for which they carried the burden of proof). There are various reasons why the district court could reasonably have decided to use only the rent Mr. Wagoner received as the measure of offset, some of which are detailed in the court's Judgment.[2]

[¶26]  First, as the district court stated, the Fugers did not explain why fair rental value for every month Mr. Wagoner possessed the second building was the appropriate measure for offset under the circumstances of this case. Instead, they relied solely on the finding that the fair rental value was $2,500/month, and the fact that Mr. Wagoner possessed the building for 65 months. Although not expressly stated, the district court's conclusion implies the Fugers did not carry their burden of proof regarding offset; something the record bears out. Specifically, the Fugers did not offer any evidence regarding the availability of renters while the building was unoccupied or demonstrating Mr. Wagoner could have had a renter in the second building when Mr. Pitt and Excel were not there. In fact, the only evidence presented on that issue was testimony from Mr. Wagoner's wife, who testified she and her husband tried to rent the second building between the time Mr. Pitt vacated it and Excel arrived, but their efforts were unsuccessful.

[¶27]  The district court also expressly concluded it would be inequitable to offset Mr. Wagoner's damages by the fair rental value of the second building during the entire time he possessed it. There are numerous reasons why the district court could have so concluded, chief among them the uncontroverted testimony from Mrs. Wagoner that the Wagoners tried to rent the second building after Mr. Pitt left but could not. This alone could justify a finding that it would be inequitable to offset Mr. Wagoner's damages by the fair rental value of the second building, at least during the time the Wagoners sought out but could not find a tenant. In addition, while Mr. Wagoner did not receive rent from Mr. Pitt for fifteen of the months he was a tenant, the district court explained how Mr. Pitt performed work on the property during that time. This included building a containment

---

[2] The district court included findings of fact and conclusions of law in the Judgment at the parties' request pursuant to Wyoming Rule of Civil Procedure 52(a)(1)(A). While the purpose of specific findings under Rule 52(a) "is to inform the appellate court of the underlying facts supporting the trial court's conclusions of law and disposition of the issues," our review is not limited to the district court's written findings. *Cross*, 7 P.3d at 928 (quoting *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo. 1993), *overruled on other grounds by Hassler v. Circle C Res.*, 2022 WY 28, 505 P.3d 169 (Wyo. 2022)) (other citations omitted). Rather, we may "examine all of the properly admissible evidence in the record." *Id.*

area/pit, installing electricity, and contributing to the cost of and constructing the Ready Line. It would be reasonable to conclude this work was in lieu of rent, as at the time Mr. Wagoner believed he would own one of the buildings and the land. Instead, the Fugers maintained ownership and reaped the benefits of these improvements.

[¶28] The district court also acknowledged Mr. Wagoner performed approximately 100 hours of unpaid maintenance and repair work on the two buildings and the Western States Yard over several years, but he could not prove the value of his work with reasonable certainty because he did not keep records. As well, Mr. Wagoner assisted Mr. Fuger with obtaining building permits—believing when he did so he was going to own one of the buildings and the Western States Yard. Finally, had the district court applied the fair rental value of the second building for 65 months as the offset, Mr. Wagoner's net damages for constructing and maintaining two buildings, one of which he believed for years was to be his, would have been less than $20,000. All these circumstances could have reasonably led the district court to its conclusion that "a set off of the potential value to [Mr.] Wagoner, rather than the actual value to [Mr.] Wagoner, would be inequitable."

[¶29] For these reasons, we cannot find the district court abused its discretion with respect to offset.

## II.     *Prejudgment Interest*

[¶30] Prejudgment interest is an appropriate element of damages in some cases. *KM Upstream, LLC*, ¶ 45, 278 P.3d at 727 (citing *Pennant Serv. Co. v. True Oil Co.*, 2011 WY 40, ¶ 36, 249 P.3d 698, 711 (Wyo. 2011)). This may be true in cases alleging unjust enrichment. *See, e.g.*, *Horseshoe Est. v. 2M Co., Inc.*, 713 P.2d 776, 781-82 (Wyo. 1986). Indeed, the very nature of prejudgment interest is to avoid unjust enrichment, since it "is a measure of damages to compensate for the lost use of money during the time it was owed a prevailing party." *Lew v. Lew*, 2019 WY 99, ¶ 20, 449 P.3d 683, 688 (Wyo. 2019) (citing *Stewart Title Guar. Co. v. Tilden*, 2008 WY 46, ¶ 28, 181 P.3d 94, 103-04 (Wyo. 2008); *Pennant Serv. Co.*, ¶ 36, 249 P.3d at 711; *State v. BHP Petroleum Co.*, 804 P.2d 671, 673 (Wyo. 1991)). "Prejudgment interest is available if a two-part test is met: (1) the claim must be liquidated, as opposed to unliquidated, meaning it is readily computable via simple mathematics; and (2) the debtor must receive notice of the amount due before interest begins to accumulate." *KM Upstream, LLC*, ¶ 45, 278 P.3d at 727.

[¶31] The Fugers appeal the award of prejudgment interest based only on the first part of the two-part test, asserting Mr. Wagoner's claim was unliquidated. They do not allege or argue they received insufficient notice.[3] In support of their argument that Mr. Wagoner's

_____

[3] Although the district court acknowledged notice is a requirement for an award of prejudgment interest, it did not make any express findings regarding notice. The district court did, however, find interest started to accrue on June 1, 2018, the date of Mr. Wagoner's last payment to RSNB Bank on the loan. In this regard, we note the following: "The debtor must receive notice of the amount due before interest starts to run. A

9

claim was not liquidated, they explain his underlying damages were partially based on the district court's opinion and discretion. Specifically, the Fugers claim the damages subject to prejudgment interest were not known (i.e., liquidated) until the district court determined Mr. Wagoner's unliquidated damages (for his labor and project management), and then calculated net damages after offset. The assertion that the district court was not entitled to award prejudgment interest because Mr. Wagoner's claim was unliquidated is reviewed de novo. *KM Upstream, LLC*, ¶ 44, 278 P.3d at 727.

[¶32] The relevant inquiry for determining whether a claim is liquidated is the nature of the claim. *Thorkildsen v. Belden*, 2012 WY 8, ¶ 8, 269 P.3d 421, 423 (Wyo. 2013) (prejudgment interest is appropriate for claims that are compensatory in nature). A liquidated claim is readily computable via simple mathematics. *Id.* It is not unusual for an underlying damages award to include both liquidated and unliquidated damages, as was the case here. *See, e.g., Universal Drilling Co., LLC v. R&R Rig Service, LLC*, 2012 WY 31, ¶ 52, 271 P.3d 987, 1002 (Wyo. 2012) (finding $97,500.00 of a $188,301.50 damages award was liquidated). In addition, "[e]ven though the existence of an unliquidated counterclaim or set-off necessarily puts the amount payable in doubt, it is well settled that it does not render the claim itself uncertain or deprive the claimant of the right to prejudgment interest." *Holst*, 696 P.2d at 635 (quoting *Rissler & McMurry Co.*, 559 P.2d at 33).

[¶33] Here, the district court properly concluded that Mr. Wagoner's claims for unjust enrichment damages for unreimbursed construction materials ($42,000.00), the Ready Line ($12,000.00), other unreimbursed fees and costs ($7,183.00), and unreimbursed payments he made to the Fugers or RSNB Bank to service the construction loan ($160,205.19), were liquidated (a total of $221,388.19). At trial, there was no dispute these were the amounts Mr. Wagoner paid. The amounts are individually and collectively easy to compute via simple mathematics and were easily computable once the payments were made. *KM Upstream, LLC*, ¶ 45, 278 P.3d at 727. The district court also properly concluded Mr. Wagoner's claims for damages for his labor and supervisory work for the construction of the site and buildings ($173,720) were unliquidated since those damages required the court to make findings on the proper measure of damages by considering the cost of providing services versus the market value of those services. That is, those damages were not computable until trial. Ultimately, the district court determined the award of prejudgment interest to Mr. Wagoner should be based not on the total amount of liquidated damages, but instead on a lesser amount after accounting for its equitable determinations about offset. However, that does not change the nature of the underlying claim for those liquidated damages.

---

defendant cannot be in default if he is not informed of what to pay. There must be a fixed and determined amount which could have been tendered and interest thereby stopped." *Rissler & McMurry Co. v. Atlantic Richfield Co.*, 559 P.2d 25, 34 (Wyo. 1977) (citing *Binning v. Miller*, 60 Wyo. 114, 146 P.2d 527 (1944)). Notice of the amount due is typically achieved by some form of a demand. *See, e.g., Holst v. Guynn*, 696 P.2d 632, 636 (Wyo. 1985).

[¶34] For these reasons, we cannot find the district court erred as a matter of law in determining a portion of Mr. Wagoner's damages were liquidated and he was therefore entitled to prejudgment interest on those damages.

[¶35] The Fugers also claim the district court ignored "the character of the liquidated portion of the claim relative to the Fugers' offset claim," since the offset for fair rental value of the building Mr. Wagoner occupied was greater than the liquidated amount he paid in rent. As a result, the Fugers assert "common sense" dictates Mr. Wagoner's $160,205.19 in liquidated damages for rent and loan payments "should first be allocated to the Fugers' offset for fair rental value." The district court took a different approach. While it correctly concluded it should award prejudgment interest on only the net difference between liquidated claims and offsets, it did not offset each category of liquidated damages line-by-line to determine the net amount of liquidated damages subject to prejudgment interest. *See, e.g., Hollon v. McComb*, 636 P.2d 513, 516-17 (Wyo. 1981). Instead, it found liquidated damages accounted for approximately 56 percent of Mr. Wagoner's overall damages, and then reduced the amount of liquidated damages by a proportionate amount of the offset (approximately 56 percent). As a result, the district court awarded prejudgment interest on net liquidated damages after offset of only $72,639.80.

[¶36] We have not previously addressed the standard for reviewing the methodology used to reduce liquidated damages by offset for the purposes of prejudgment interest in an unjust enrichment case. In doing so now, we will review the district court's decision for an abuse of discretion based upon the equitable nature of the unjust enrichment claim and offset, as well as the standard of review for whether a district court should award prejudgment interest. *Hanft*, ¶ 87, 485 P.3d at 392.

[¶37] We cannot find the district court abused its discretion in this case. While it could have examined each individual component of the damages by its corollary offset, nothing in our case law required that the district court do so. The Fugers do not cite any authority from Wyoming or elsewhere compelling the district court to use their suggested methodology. In fact, the U.S. District Court in *Edwards v. McElliotts Trucking, LLC,* CV No. 3:16-1897, 2018 WL6531680, at * 2-3 (S.D.W.Va. 2018), used an approach like the one used by the district court in this case. In *Edwards,* the court calculated the percentage of the total verdict representing liquidated damages and then applied that percentage to the total judgment after offset to determine the amount subject to prejudgment interest. *Id.* It was not unreasonable in the case before us for the district court to determine prejudgment interest using a methodology comparable to the one used in *Edwards*, especially since it was a court sitting in equity tasked with making equitable determinations about how the offset should impact prejudgment interest.

[¶38] For these reasons, we cannot find the district court abused its discretion in determining how to account for offset in awarding prejudgment interest to Mr. Wagoner.

11

## *CONCLUSION*

[¶39]  The district court did not err by offsetting Mr. Wagoner's damages by the amount of rent he actually received on the second building rather than its fair rental value for the 65 months he possessed it, nor did it err in awarding Mr. Wagoner prejudgment interest on a portion of his damages.

[¶40]  Affirmed.